THE STATE OF OHIO, APPELLEE, v. NICHOLS, APPELLANT.

[Cite as State v. Nichols, 3 Ohio App. 2d 182.]

(No. 1652—Decided August 11, 1965.)

*Mr. Paul J. Mikus*, prosecuting attorney, and *Mr. Joseph R. Grunda*, for appellee.

*Mr. Andrew J. Warhola*, for appellant.

HUNSICKER, J. An appeal on questions of law has been lodged in this court from a judgment rendered on the verdict

of a jury, which verdict determined that Roy Nichols was guilty of the crime of murder in the second degree.

At one o'clock a. m., May 3, 1964, Eugene Sapolski was found in the yard of his home seriously wounded as the result of blows inflicted upon his head. He died as a result of such injuries.

A police investigation resulted in the arrest on May 13, 1964, of Roy Nichols, aged 18, the brother-in-law of the deceased. Interrogation on that day, i. e., May 13, 1964, by the police, and later by an assistant county prosecutor of Lorain County, in the presence of a court reporter, resulted in a statement by Nichols of the details leading up to, during, and after the matter wherein the deceased, Sapolski, suffered death. In the statement to the assistant county prosecutor, Nichols told in great detail how he came to the Sapolski yard, the purpose for which he came, and the manner of inflicting the blows upon the head of his brother-in-law.

At the conclusion of that statement, Nichols was immediately taken before the acting municipal judge for a preliminary hearing on the charge of first degree murder, at which time he was bound over to the grand jury of Lorain County, Ohio.

The statement made to the assistant county prosecutor complied with all safeguards found by this court to exist in the case of *State* v. *Stewart*, 120 Ohio App. 199, affirmed 176 Ohio St. 156; motion for certiorari overruled by Supreme Court of the United States, December 14, 1964.

Prior to making the statement to the assistant county prosecutor, Nichols was told that he need not make a statement, unless he wished to do so voluntarily. At the preliminary hearing he was read the charge of first degree murder, and he was told he could enter one of three pleas, to wit, not guilty, guilty, and no contest. He was then told that the court before which he was then appearing did not have final jurisdiction, only jurisdiction to take a plea, then bind Nichols over to the grand jury of the county. Nichols then plead guilty, after which the court asked him if he had a lawyer, and if he realized the seriousness of the charge, which carries with it a death penalty. Nichols said he realized the seriousness of the charge under which he was being held, and that he did not wish counsel

or a preliminary hearing. The acting municipal judge then again cautioned Nichols concerning the seriousness of the offense, and again inquired if he wished his plea of guilty to stand even though he could have counsel. Nichols then said: "Yes."

Thereafter a written statement was signed by Nichols with reference to his not wanting counsel or a preliminary hearing, and in which statement he entered a plea of guilty to first degree murder. He then was bound over to the grand jury, which grand jury returned against Nichols an indictment for murder in the second degree. He was tried in the Court of Common Pleas upon the indictment and found guilty of the offense charged.

The statement Nichols made in the presence of the court reporter before his appearance in Municipal Court, as well as all of that which transpired in that court, was read by this reporter to the jury. The introduction of these matters was based upon the contention that they were admissions against interest.

In the course of the trial, counsel for Nichols called as a witness a psychiatrist who had examined Nichols, but this witness was denied the opportunity to testify by the trial court for the reason that there was no plea of not guilty by reason of insanity, and hence this doctor was not a competent witness for the defense. Counsel for the defense proffered the testimony of the lady doctor, and the bill of exceptions contains such testimony taken out of the presence of the jury.

Counsel for Roy Nichols says the trial court erred: in refusing to allow in evidence the testimony of the psychiatrist; in failing to hold a preliminary judicial examination upon the issue of the voluntary or involuntary nature of the alleged confession or admissions before allowing them in evidence; in submitting the issue of the voluntary or involuntary nature of the confession or admissions to the jury without first having held such preliminary examination thereon; in permitting the court reporter to read to the jury a transcript of the statement made to the assistant county prosecutor; and in failing to exclude the transcript of the proceedings before the Municipal Court from consideration by the jury.

Without the use of the statement Nichols gave to the as-

sistant county prosecutor in the presence of the court reporter, the evidence of the guilt of Roy Nichols is meager.

Counsel for Nichols objected to the use of the statement on the ground that it was not a voluntary statement, and that, when given, a lawyer was not present in behalf of Nichols. The trial court then told the jury that if they should find that the statement was not given voluntarily, they could not consider the statement as evidence. Other pertinent instructions concerning this subject were also given, both at the time of admission and at the conclusion of the case. No preliminary examination was made by the trial court bearing on the voluntary nature of the statement, although the lawyers did argue at some length as to what the evidence on that subject would disclose.

The Ohio rule with respect to the subject now considered may be found in: *Spears* v. *State,* 2 Ohio St. 583; *Rufer* v. *State,* 25 Ohio St. 464; *Burdge* v. *State,* 53 Ohio St. 512; and *State* v. *Powell,* 105 Ohio App. 529.

The discussion between counsel in this case, concerning the nature of the claimed voluntary statement made by Nichols, did not constitute a preliminary hearing on the nature of the voluntariness of the admissions. Counsel for the state insist that the statement given is an admission against interest, while defense counsel insists that it is a confession. In the matter before us, we must say there is no distinction, for the statement as given is a full and complete account of the homicide, which does establish an offense committed by Nichols. Any discussion of admissions or confessions under the circumstances herein is not needed.

There was very little evidence bearing on the involuntary nature of the confession adduced by Nichols, but there was sufficient to create an issue thereon.

The procedure used by the trial court herein is similar to that in the case of *Jackson* v. *Denno, Warden,* 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774. In that case the Supreme Court of the United States determined that the procedure as used in the instant case is a violation of a constitutional right, and that the issue of voluntariness must be determined by the court or an independent jury before its use, and then the matter shall be submitted to the jury trying the case, under proper instruction. The jury may then believe or disbelieve

that it was a voluntary confession. The Ohio rule announced in *Burdge* v. *State, supra,* and the *Spears* and *Rufner cases, supra,* is similar.

The fact that there was no lawyer present at the interrogation of Nichols is not in our judgment prejudicial under the facts as disclosed by the bill of exceptions. *State* v. *McLeod,* 1 Ohio St. 2d 60.

We pass now to the use, as evidence, of the transcript of the proceedings before the acting municipal judge.

Under Section 2937.09 *et seq.,* Revised Code, the procedure is outlined when a plea of guilty is entered on a felony charge. This procedure was substantially followed, and a plea of guilty to the charge of murder in the first degree was received. It is well to observe here that in a felony case the Municipal Court does not have final jurisdiction, and the accused must be indicted by a grand jury. Upon arraignment after indictment, the accused may enter any plea provided by Chapter 2943, Revised Code.

"In order for lack of counsel on a plea of guilty to constitute a denial of due process, it must appear that such lack of counsel so prejudiced the accused that he was unfairly confined, and that such lack was apt to result in injustice." *Banks* v. *Maxwell, Warden,* 175 Ohio St. 435.

The entry of a plea of guilty by an accused constitutes a waiver of a jury trial. *McAuley* v. *Maxwell, Warden,* 174 Ohio St. 567. See also: *Caldwell* v. *Haskins, Supt.,* 176 Ohio St. 261.

If a confession made outside the courtroom to one or two persons may be offered in open court, it is difficult to see how a confession made in open court to the same or similar facts can be prejudicial. We are assuming in such a situation that the accused is fully informed of his rights, and also that he comprehends the effect of his statement. The fact that one has entered a plea of guilty in open court does not render the introduction of such proceedings in evidence improper.

In the course of the trial, counsel for Nichols sought to introduce the testimony of Dr. Margaret Read, a psychiatrist, for the purpose of showing that Nichols was of such low mentality that he could not form an intention to kill. Purpose and malice are two of the most important ingredients in the crime with which Nichols was charged.

There is no claim that Nichols was not sane at the time of the homicide or at the trial. There is the claim that he was not of sufficient mental capacity to form the intent to kill, which must be established before he can be convicted of the offense herein.

Section 2945.42, Revised Code, says, in part:

"No person is disqualified as a witness in a criminal prosecution by reason of his interest in the event thereof as a party or otherwise, or by reason of his conviction of crime. * * *"

Thus, Dr. Read could be called as a witness by the defense, and the trial court should have permitted her to take the witness stand. Whether the testimony she was to offer was competent is a question the trial court should have passed upon as she was interrogated. A court should not arbitrarily in any case refuse to permit a witness to appear in open court and offer testimony. The excuse given in this case is, that since there was no plea of not guilty by reason of insanity, any testimony respecting the mental deficiency of the accused was incompetent. We thus must determine whether evidence of this nature is competent in a homicide case where intent and malice are matters to be proved to establish guilt.

"Purposely" is defined in Webster's Third New International Dictionary as: "with a deliberate or an express purpose: on purpose; intentionally; designedly; expressly." See: *Holt* v. *State*, 107 Ohio St. 307.

In *State* v. *Huffman*, 131 Ohio St. 27, the fourth paragraph of the syllabus says:

"4. The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court."

"* * * Intent is a design or purpose. It is a subjective fact. It is the secret of one's mind, and unless he discloses his purpose by words as to why he did a particular act, the only way his purpose may be determined is from the proven facts and the logical inferences therefrom. * * *" *State* v. *Taylor*, 83 Ohio App. 76, at p. 77.

An annotation on the subject "Subnormal mentality as

defense to crime'' may be found in 44 A. L. R. 584. In 1 Wharton's Criminal Law & Procedure, Anderson Edition, Section 41, the author says:

''There is a division of authority as to whether the subnormal mentality of the defendant may be considered in determining whether he acted with premeditation. The admission of proof of mental deficiency which does not show legal irresponsibility has been refused in some decisions, but admitted by others.''

In *People* v. *Moran*, 249 N. Y. 179, at p. 180, 163 N. E. 553, the court said:

''Feebleness of mind or will, even though not so extreme as to justify a finding that the defendant is irresponsible, may properly be considered by the triers of the facts in determining whether a homicide has been committed with a deliberate and premeditated design to kill, and may thus be effective to reduce the grade of the offense. * * *''

See also: *People* v. *Colavecchio*, 11 App. Div. 2d 161, 202 N. Y. S. 2d 119.

Low mental ability is not a defense for crime; neither is congenital or other inferiority a test of criminal irresponsibility. The fact that an accused is weak mentally, but not insane, should not affect the admissibility of a voluntary confession, or excuse one for his criminal acts.

In the instant case the state is required to establish purpose and malice; these are subjective states of mind; and since states of mind are important, psychiatric evidence may be admitted, when relevant to prove or disprove their existence, to the same extent as any other relevant evidence. Thus, while we reiterate that weak mentality is not a defense for crime, nevertheless evidence on that subject is proper in considering the purpose and malice fundamental in a charge of murder in the second degree.

What has been said herein with reference to the competency of evidence to be given by the psychiatrist applies also with reference to such expert's testimony bearing upon the voluntariness of the confession. The fact of subnormal mentality may be considered by the trial court in determining whether the confession was voluntary. An annotation on this subject is found in 69 A. L. R. 2d 348.

We therefore determine herein that error prejudicial to the substantial rights of the appellant, Nichols, intervened in the trial of this case; first, in not conducting a preliminary inquiry as to whether the statement by Nichols, given to the assistant county prosecutor, was given voluntarily; and, second, in refusing to permit the testimony of the psychiatrist as to matters relating to the voluntariness of the confession, and the ability of Nichols to do an act purposely and maliciously. For the reasons above given, the case must be reversed, and the cause remanded to the Court of Common Pleas for a new trial.

We have examined all other claimed errors and find none prejudicial.

*Judgment reversed and cause remanded.*

DOYLE, P. J., and BRENNEMAN, J., concur.