**Terry Van DEAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5804.**

Supreme Court of Wyoming.

Aug. 22, 1983.

Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., and Sharon A. Lyman, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN, JJ.

ROONEY, Chief Justice.

This appeal is from a judgment and verdict after a jury trial in which appellant was found guilty of first-degree arson in violation of § 6–7–101, W.S.1977.[1] Appellant had entered pleas of not guilty, not guilty by reason of mental illness or deficiency,[2] and not triable by reason of mental illness or deficiency.[3] Appellant was sentenced to not less than two nor more than eight years in the penitentiary with the additional requirement that the last six months of incarceration be at the Wyoming State Hospital in Evanston.

---

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

1. Section 6–7–101, W.S.1977, provides:
 "Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto or any standing timber on public or privately owned land, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two (2) nor more than twenty (20) years."

2. "Mental deficiency" is defined in § 7–11–301, W.S.1977, as "a defect attributable to mental retardation, brain damage and learning disabilities." Section 7–11–304, W.S.1977, provided at the time of the offense and trial:
 "(a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.
 "(b) As used in this section, the terms 'mental illness or deficiency' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."
 The Criminal Code, which became effective July 1, 1983, added the following sentence to § 7–11–304(a):
 "As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(c)."

3. Section 7–11–302(a), W.S.1977, provides:
 "(a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity to:
 "(i) Comprehend his position;
 "(ii) Understand the nature and object of the proceedings against him;
 "(iii) Conduct his defense in a rational manner; and
 "(iv) Cooperate with his counsel to the end that any available defense may be interposed."

Appellant words the issues on appeal as follows:

"Whether the trial court erred in refusing Appellant's instructions regarding mental illness or deficiency, and in giving Instruction No. 6, which failed to adequately define the applicable principles regarding mental illness or deficiency.

"Whether the trial court erred in refusing to consider probation as a sentencing alternative, which failure constitutes plain error."

We affirm, but modify the sentence to delete the requirement that some of the sentence be served at the Wyoming State Hospital.

## INSTRUCTIONS

Appellant objected to the refusal of the trial court to give his requested Instructions B, C and E, and he objected to the giving of Instruction 6.

Proposed Instruction B reads:

"A finding that defendant was mentally responsible for his acts is not equivalent to a finding that he acted with specific intent, that is, willfullness [sic] and malice, necessary for the offense alleged. Even if you find from the evidence in the case beyond a reasonable doubt that the defendant was mentally responsible for his acts at the time of the alleged offense, it is still your duty to consider all the evidence in the case which may aid in determining whether he acted with necessary specific intent."

Proposed Instruction C reads:

"If you find that the defendant's mental capacity was diminished to an extent that would make him incapable of forming the willfullness [sic] and malice that is an element of the crime of first degree arson, then you must find the defendant not guilty."

Proposed Instruction E reads:

"A person is not legally responsible for his criminal conduct if:

"1. He was suffering at the time of the criminal conduct from a mental illness or deficiency; and

"2. As a result, he lacked substantial capacity, either to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law.

"The term 'mental illness' means mental disease or defect that would render the defendant incapable of understanding the nature, quality, consequences, and wrongfullness [sic] of his act, and includes the concept of 'irrestistable-impulse [sic]' or 'uncontrollable act'.

"The term 'mental deficiency' means a defect attributable to mental retardation, brain damage or a learning disability.

"The phrase 'mental illness or deficiency' does not include an abnormality manifested only by repeated criminal conduct.

"The State must prove that the defendant was mentally responsible for the crime beyond a reasonable doubt.

"Thus, if you do not believe that the State has proven beyond a reasonable doubt that the defendant was mentally responsible, then you should find him not guilty by reason of mental illness or deficiency."

Instruction 6 reads:

"Under certain circumstances a person is not legally responsible for his criminal conduct. Among those circumstances, defendant is not legally responsible for criminal conduct if:

"1. He was suffering at the time of the criminal conduct from a mental illness or deficiency; and

"2. As a result, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

"The term 'mental deficiency' means a defect attributable to mental retardation, brain damage and a learning disability.

"The phrase 'mental illness or deficiency' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

"The state must prove that the defendant was mentally responsible for the crime beyond a reasonable doubt.

"Thus, if you do not believe that the state has proven beyond a reasonable doubt that the defendant was mentally responsible, then you should find him not guilty by reason of mental illness or deficiency."

Proposed Instruction B is Wyoming Pattern Jury Instruction Criminal No. 4.103 except that appellant has added the words "that is willfullness [sic] and malice" as a definition of specific intent. And this is the misconception which invalidates appellant's entire position. He argues that "the defense theory of the case [is] that appellant was unable to form the specific intent which is a necessary element of the crime of first-degree arson."

First-degree arson was not a specific intent crime at the time of the offense and trial.[4] When an act is made a crime by the legislature, two kinds of "intent" may be involved. A "general intent" may be sufficient, i.e. an intent to commit the act or engage in specific conduct, guilty knowledge, mens rea. A specific intent may be made one of the required elements of the crime, i.e. with a designated purpose or intention to produce the desired result such as "intent to kill," 22 C.J.S. Criminal Law, §§ 30 and 32; 21 Am.Jur.2d Criminal Law, §§ 129 and 130.

" * * * 'When the definition of a crime consists of only the description of a particular act, without reference to *intent to do a further act* or *achieve a future consequence*' the fact that the defendant intended to do the proscribed act makes that crime a *general criminal intent* offense. (Emphasis added.) 'When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of *specific intent*.' * * *" (Emphasis in original.) *People v. Love*, 111 Cal.App.3d Supp. 1, 168 Cal.Rptr. 591, 600 (1980).

" * * * A specific intent crime is one in which a particular intent is a necessary

element of the crime itself. * * *" *Russell v. State*, Fla.App., 373 So.2d 97, 98 (1979).

The word "intent" has long been accepted for use in these fashions, but it is not a very apt term to describe the mental element requisite for each crime, covering as it does not only the specific intent necessary in some crimes and the general intent to do wrong which is sufficient in other crimes, but also criminal negligence, which should not properly be called "intent" at all. Long time use, however, dictates the use of the word in these fashions.

■ Appellant may have misconstrued the words "willfully and maliciously" in the statute (see fn. 1) as a requirement of specific intent. Obviously, such is not so. These words describe the act to be committed and not an intention to produce a desired specific result. Any intent to be derived from them is a general intent.

" * * * [W]illfully means intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly. [Citations.]" *Matter of Adoption of CCT and CDT*, Wyo., 640 P.2d 73, 76 (1982).

" * * * '[M]alicious' when used in defining the crime of arson is quite different from its literal meaning. * * * 'The malice * * * need not be express, but may be implied; it need not take the form of malevolence or ill will, but it is sufficient if one deliberately and without justification or excuse sets out to burn the dwelling house of another.'" *Commonwealth v. Lamothe*, 343 Mass. 417, 179 N.E.2d 245, 246 (1961).

"We find no error in the trial court's refusal to give this instruction. To be a wilful and malicious burning in the law of arson, the burning must simply be done voluntarily and without excuse or

---

**4.** See fn. 1. The Criminal Code, which became effective July 1, 1983, defines first-degree arson as follows:

"A person is guilty of first-degree arson if he ˙maliciously starts a fire or causes an explo-

sion *with intent to destroy or damage an occupied structure.*" (Emphasis added). Section 6–3–101(a), W.S.1977.

justification and without any bona fide claim of right. *In re Appeal In Pima County Juvenile Action No. J–37390–1,* 116 Ariz. 519, 570 P.2d 206 (App.1977). Arson is a crime of general, rather than specific intent and the requirement that the defendant act 'wilfully and maliciously' does not mean that the defendant must have an actual subjective purpose that the act he does intentionally shall produce either a (1) setting a fire or burning of the structure or (2) damage to or destruction of said structure. *State v. O'Farrell,* 355 A.2d 396 (Me.1976). As pointed out in *State v. Bell,* 113 Ariz. 279, 551 P.2d 548 (1976) reh. den. 113 Ariz. 326, 553 P.2d 1200 (1976), the word 'wilfully' does not add a specific intent element. 'Wilfully' means intentionally as distinguished from accidentally or involuntarily and ·'maliciously' means that state of mind which actuates conduct injurious to others without lawful reason, cause or excuse. *In re Appeal In Pima County Juvenile Action No. J–37390–1,* supra; see also, A.R.S. § 1–215(36) and (15)." *State v. Scott,* 118 Ariz. 383, 576 P.2d 1383, 1385 (1978).

The trial court properly refused appellant's proposed Instruction B. It would have injected the element of specific intent into the crime charged—an element that is not properly there. The court did instruct the jury on the definitions of willfully and maliciously as follows:

"Willfully means conduct that is purposeful and intentional and not accidental."
" 'Maliciously' means the commission of a wrongful act done intentionally without legal justification or excuse. The term 'malice' conveys the meaning of hatred, ill will, or hostility and implies a wicked condition of the mind."

As previously noted, such is other than specific intent, and there was no instruction on specific intent.

Proposed Instruction C, supra, would direct jury consideration of the concept of diminished capacity as a defense. Some jurisdictions recognize such but usually restrict the concept to specific intent crimes.

Ordinarily, the fact that first-degree arson is not a specific intent crime might serve to obviate the necessity of further considering the propriety of the refusal to give proposed Instruction C. However, in objection to the refusal to give it, appellant argued in part:

" * * * I still feel [it] stands for the proposition that mental condition can be used as a defense to not only specific intent crimes but any crime that requires a specific state of mind, such as willfulness and malice."

We defined "diminished capacity"—also referred to as "partial responsibility"—in *Peterson v. State,* Wyo., 586 P.2d 144, 152 (1978):

"While admittedly a difficult hypothesis to define, as a majority of courts dealing with the subject have generally found, diminished capacity

" '* * * includes any psychiatrically recognized abnormal mental condition, *other than intoxication produced by the use of alcohol or drugs,* including subnormal intelligence, but which does not constitute legal insanity under any definition of legal insanity.' (Emphasis added.)

"Anno., Mental or Emotional Condition as Diminishing Responsibility for Crime, 22 A.L.R.3d 1228, 1231. Such a concept recognizes not only that a mental disease or defect not arising to the level of legal insanity may be sufficient to negate the existence of a specific crime element, *People v. Welborn,* 1967, 257 Cal.App.2d 513, 65 Cal.Rptr. 8, it as well exposes the illogic of the 'all or nothing' assumption underlying numerous judicial decisions—that a person is either wholly 'sane' and therefore fully answerable for all his actions, or 'insane' and not answerable at all. *Commonwealth v. Walzack,* 1976, 468 Pa. 210, 360 A.2d 914, 918. While many courts have discussed both diminished capacity and intoxication in the context of negation of a required element of criminal intent (including malice as is in question in the situation at bar) most courts, in discussing diminished capacity recog-

nize it independent and separate from any defense of intoxication. *People v. Poddar,* 1974, 10 Cal.3d 750, 111 Cal.Rptr. 910, 518 P.2d 342; *State v. Santiago,* 1973, 55 Haw. 162, 516 P.2d 1256; *State v. Green,* 1975, 271 Or. 153, 531 P.2d 245; *In re Miller,* 1973, 33 Cal.App.3d 1005, 109 Cal.Rptr. 648; *Johnson v. State,* 1970, 226 Ga. 511, 175 S.E.2d 840; *State v. Nichols,* 1965, 3 Ohio App.2d 182, 209 N.E.2d 750. See generally, Anno., §§ 5–9, 22 A.L.R.3d 1228, 1238–1257. Contra: *Johnson v. State,* Alaska 1973, 511 P.2d 118." (Footnote omitted.)

We did not approve the concept of diminished capacity in Peterson. It was discussed there only to explain what it was and to discard it from consideration. The case was resolved on the basis of an intoxication instruction.

The concept of diminished capacity has found favor in several jurisdictions as a result of a problem, perceived by them, in applying the historically accepted "tests" to determine the existence of the defense of insanity to a criminal charge. The theory is that mental insufficiency may negate the intent requisite to the crime charged, although such insufficiency does not pass the test by which insanity is determined. The resulting difficulty, of course, is the lack of a method—without tests—to determine degrees of sanity or insanity. Thus, the same problem exists in attempting to apply "diminished capacity" as in applying the historically accepted "tests." Most of the jurisdictions accepting the concept restrict its use to specific intent crimes. But if there is validity to its rationale, such restriction is improper since the rationale is the same for general intent crimes and for specific intent crimes. Annotation: Mental or Emotional Condition as Diminishing Responsibility for Crime, 22 A.L.R.3d 1228; *Peterson v. State,* supra; LaFave and Scott, Criminal Law, § 42 (1972).

 In any event, we need not consider the application of historic tests, of diminished capacity, of the several philosophies evolving therefrom, etc., as defenses to a criminal charge. The mental element necessary for commission of a crime has now been established by the legislature. (See fns. 2 and 3) Instruction 6, supra, sets forth the defenses contained in such statutes. If the legislature had intended additional defenses, it would have said so. Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions, and they will not usurp the powers of the legislature by deciding what should have been said. *Lo Sasso v. Braun,* Wyo., 386 P.2d 630 (1963); *Barber v. State Highway Commission,* 80 Wyo. 340, 342 P.2d 723 (1959). The first sentence of subsection (a) and all of subsection (b) of § 7–11–304, W.S.1977, (see fn. 2) are § 4.01 of the Model Penal Code, except that the words "mental illness or deficiency" have been substituted for the model act words "mental disease or defect." In a footnote to the quotation from *Peterson v. State,* supra, we noted that even California may have discarded the diminished capacity concept in favor of the test proposed by the American Law Institute, i.e. § 4.01 of the Model Penal Code, citing *People v. Drew,* 22 Cal.3d 333, 149 Cal.Rptr. 275, 583 P.2d 1318 (1978); see *People v. Wischemann,* 94 Cal. App.3d 162, 156 Cal.Rptr. 386 (1979). California has vacillated on the issue, as noted in the dissenting opinion, but § 7–11–304, W.S.1977 (see fn. 2) was § 4.01 of the Model Penal Code and the reasoning for the holdings relative thereto is pertinent. The court properly refused proposed Instruction C and adequately instructed the jury in Instruction 6 relative to the mental condition which would constitute a defense to the charge.

Finally, appellant argues that proposed Instruction E, supra, should have been given instead of Instruction 6, supra. Proposed Instruction E is similar to Instruction 6 except that it inserts a new paragraph between the first and second paragraphs of item 2 of Instruction 6 and it deletes the words "or otherwise antisocial" from the third paragraph of item 2.

 Although appellant treats proposed Instruction E as correlative to the diminished capacity concept, the added paragraph

injects "irresistable-impulse [sic]" or "uncontrollable act" into consideration. The "irresistable-impulse [sic]" test has been accepted in a number of jurisdictions as a standard to determine criminal responsibility. However, it is inconsistent on its face with the standard set forth in the Model Penal Code and in §§ 7–11–301 and 7–11–304, W.S.1977 (see fn. 2). 21 Am.Jur.2d Criminal Law, § 60; *United States v. Freeman,* 357 F.2d 606 (2d Cir.1965); *Schwager v. State,* Wyo., 589 P.2d 1303 (1979). As already noted, the legislature has set forth the standard relative to the mental condition which will constitute a defense to a criminal charge. Such standard should not be increased or decreased.

■ The deletion of the words "or otherwise antisocial" from Instruction 6 as requested by proposed Instruction E would cause the instruction to only partially state the law. The third paragraph of item 2 in Instruction 6, including the words "or otherwise antisocial," is quoted from § 7–11–304(b), W.S.1977, (see fn. 2).

Proposed Instruction E was properly refused.

## PROBATION

■ The question of probation, like other sentencing issues, is left to the discretion of the trial court, but the court must consider a request for probation. *Sanchez v. State,* Wyo., 592 P.2d 1130, 1137 (1979), and *Jones v. State,* Wyo., 602 P.2d 378, 383 (1979).

Appellant argues that probation was not here considered, stating that a presentence investigation was not conducted. At the conclusion of the trial, the following occurred:

"THE COURT: * * *

"Do you or your client wish a presentence investigation and report?

"MR. O'NEIL: No, Your Honor.

"THE COURT: And speaking, then, to Mr. Dean, do you wish a presentence report?

"THE DEFENDANT: No, Your Honor.

"THE COURT: And, Mr. Sundquist, does the State wish a presentence investigation and report?

"MR. SUNDQUIST: No, Your Honor. We'd waive that."

At the time of sentencing, the court said:

"I'll be very frank. I don't feel that probation should be granted in this matter.

\* \* \* \* \* \*

"Mr. Dean has a good record. For that reason—and he has parents that are willing to help him—for those reasons I feel that a minimum sentence should be applied, but the court does not feel that this is a proper case for probation.

"I feel that probation in this matter would bring the law into disrespect by the citizens. I feel that some punishment should be meted out."

The court obviously *did* consider probation.

## SENTENCE

Section 6–7–101, W.S.1977, (fn. 1) provides for a penalty of from two to twenty years *in the state penitentiary.* Appellant was sentenced to a term of two to eight years in the penitentiary with a proviso " * * * that the last six months of Mr. Dean's sentence, of the sentence that he actually serves, whether it be six months before a final and complete discharge or six months before parole, or whether it will be six months before a work release or other type of program, that he be delivered to the state hospital at Evanston, Wyoming for extensive psychiatric counseling for his personality disorders."

■ The court may order commitment of a mentally ill person to the state hospital for treatment pursuant to the proceedings set forth in § 25–10–101, et seq., W.S.1977; it may order an examination of a defendant at the state hospital pursuant to § 7–11–304, W.S.1977 (see fn. 2); it may order custody, care and treatment of a defendant at the state hospital pursuant to § 7–11–306, W.S.1977; and there may be other specific statutory provisions authorizing the court to order a person to become a patient

at the state hospital. But jurisdiction has not been given to the trial court to sentence a person to the Wyoming State Hospital as part of the penalty for criminal activity.[5] In fact, § 6–7–101, W.S.1977, (see fn. 1) expressly provides that appellant be sentenced "to the penitentiary."

Accordingly, an order issued contemporaneously with this opinion reflects that which was quoted supra relative to the service of the last six months of appellant's sentence in the Wyoming State Hospital be deleted from such sentence.

Affirmed but with the sentence modified to delete the requirement that the last six months of the sentence be served at the Wyoming State Hospital.

ROSE, Justice, specially concurring.

While I concur in the result reached by the majority, I do not join in that portion of the opinion which holds that proof of diminished capacity does not constitute a defense to specific-intent crimes in Wyoming. Had first-degree arson been, as it now is, a specific-intent crime (majority opinion, 668 P.2d at 642) at the time that the offense was committed, I would hold that the appellant should have been entitled to a jury instruction on the defense of diminished capacity. My position is based upon a review of the case law in this area and this court's discussion in *Peterson v. State,* Wyo., 586 P.2d 144 (1978).

As a general rule, most of the courts that have dealt with the issue hold that evidence of a psychiatrically recognized abnormal mental condition is admissible for purposes of proving that a defendant could not or in fact did not entertain the requisite mental state or intent required for the commission of a charged offense. See Annot. 22 A.L. R.3d 1228, 1232. The question which has divided many courts is not the viability of the diminished capacity defense, but whether application of the defense requires the presence of a lesser included offense to the crime charged. In other words, the focus of

concern of these courts has been whether the doctrine of diminished capacity can operate as a total defense to a charged crime, thereby resulting in acquittal.

In *McCarthy v. State,* Del.Supr., 372 A.2d 180 (1977), the defendant had raised the defense of insanity to the charged offenses of first-degree rape and kidnapping. On appeal, he urged that the trial court had erred in refusing to instruct the jury on the concept of "diminished responsibility." Prior to discussing the substantive aspects of defendant's claim of error, the court said:

"* * * It is fundamental that the doctrine of diminished responsibility is not intended to supplant the test of mental illness; it is only after a defendant has been determined to be 'criminally responsible' for his actions, i.e. legally sane, that the doctrine has been considered applicable to determine the degree of the offense for which he will be held responsible." 372 A.2d at 182.

The court then went on to hold that the defense of "diminished responsibility" was not available to the appellant since it was inconsistent with the offenses for which he was charged. In the court's opinion the concept of "diminished responsibility" was one of mitigation only and it therefore required that there be some lesser included offense which lacked the specific-intent requirement of the offense charged for the defense to be applicable.

A similar position to that taken in *McCarthy v. State, supra,* was adopted in *State v. Correra,* R.I., 430 A.2d 1251 (1981). There, the Rhode Island Supreme Court, in discussing the diminished-capacity doctrine, said:

"The diminished-capacity doctrine recognizes that although an accused was not suffering from a mental disease or defect when the offense was committed sufficient to exonerate him of all criminal responsibility, his mental capacity may have been diminished by intoxication, trauma, or mental disease so that he did

---

**5.** Appellant, as others, may be subject to an interinstitutional transfer to the Wyoming State Hospital by the Board of Charities and Reform, the Warden, the Parole Board, etc. See, e.g. § 25–10–114, W.S.1977.

not possess the specific mental state or intent essential to the particular offense charged. A defendant claiming diminished capacity concedes his responsibility for the act but claims that, in light of his abnormal mental condition, he is less culpable." 430 A.2d at 1253.

The court also noted that the defense is not intended to act as a complete defense to a crime charged but instead is intended to mitigate the specific intent of a charged offense thereby resulting in a conviction of a lesser included offense. By implication, the holding in this case requires that there be a lesser included offense to the crime charged before the doctrine of diminished capacity is available to raise a question concerning the defendant's ability to formulate the specific-intent element of the charged offense.

It is apparent from a review of the above-cited cases that the rationale of the rule requiring the presence of a lesser included offense in order to present a diminished-capacity defense arises from a belief that the doctrine was never intended to act as a complete defense but rather only one of mitigation. The distinction drawn is that although insanity can result in a finding of no criminal culpability, the defense of diminished capacity is designed to permit a finding of reduced criminal culpability.

A different conclusion was reached by the California Supreme Court in *People v. Wetmore,* 22 Cal.3d 318, 149 Cal.Rptr. 265, 583 P.2d 1308 (1978).[1] There the court was asked to adopt a position similar to that discussed above, i.e., that the diminished-capacity defense is available only for offenses for which there are lesser included offenses not requiring the requisite specific intent of the charged crime. The court responded to the State's urging in the following manner:

"We reject the suggestion of amicus that we sustain the trial court by holding that a defense of diminished capacity cannot be raised whenever, owing to the lack of a lesser included offense, it might result in the defendant's acquittal. A *defendant who, because of diminished capacity,*

*does not entertain the specific intent required for a particular crime is entitled to be acquitted of that crime. If he cannot be convicted of a lesser offense and cannot safely be released, the state's remedy is to institute civil commitment proceedings, not to convict him of a specific intent crime which he did not commit."* (Emphasis added.) 149 Cal.Rptr. at 267, 583 P.2d at 1310.

The court continued:

"Nevertheless, this unanimity of judicial expression reinforces our conclusion that a defense of diminished capacity arising from mental disease or defect extends to all specific intent crimes, whether or not they encompass lesser included offenses. Clearly, if a crime requires specific intent, a defendant who because of mental disease or defect lacks that intent, cannot commit that crime. The presence or absence of a lesser included offense within the charged crime cannot affect the result. The prosecution must prove all elements of the crime beyond a reasonable doubt; we do not perceive how a defendant who has in his possession evidence which rebuts an element of the crime can logically be denied the right to present that evidence merely because it will result in his acquittal." 149 Cal.Rptr. at 272, 583 P.2d at 1315.

The California Supreme Court reaffirmed its adoption of the diminished-capacity defense, as defined in *People v. Wetmore,* supra, in *People v. Cruz,* 26 Cal.3d 233, 162 Cal.Rptr. 1, 605 P.2d 830 (1980). The court stated simply: "Diminished capacity is a defense to all specific intent crimes." 162 Cal.Rptr. at 5, 605 P.2d at 834.

Other jurisdictions have followed the rationale expressed by the court in *People v. Wetmore,* supra. In *Hensel v. State,* Alaska, 604 P.2d 222 (1979), the Supreme Court of Alaska concluded that the doctrine of diminished capacity is applicable to any crime requiring specific intent as an essential element and the use of such defense does not require the presence of so-called

---

1. The defendant had been charged with burglary.

lesser included offenses. The plain reasoning of the court was that the doctrine of diminished capacity was intended to operate as a defense to any specific-intent crime. This view was also followed in *State v. Jacoby,* Iowa, 260 N.W.2d 828 (1977), and recently in *State v. Hines,* 187 Conn. 199, 445 A.2d 314 (1982). There the Supreme Court of Connecticut stated:

" * * * The state urges that this principle [diminished capacity] be confined to murder cases, but we see no reason not to apply it in any case where a specific intent is an essential element of the crime involved, including the assault charged in this case. * * * Such evidence is admitted not for the purpose of exempting a defendant from criminal responsibility, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary specific intent, the proof of which was required to obtain a conviction." 445 A.2d at 317.

The Supreme Court of Colorado has gone so far as to suggest that the defense of diminished capacity is available to negate even the mens rea requirement for a nonspecific-intent crime. In *Hendershott v. People,* Colo., 653 P.2d 385, cert. denied —— U.S. ——, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1982), the defendant had been convicted of committing a third-degree assault (a general-intent crime) and he challenged the refusal of the court to permit his raising of a defense of diminished capacity. In holding for the appellant the court noted the following:

" * * * A rule precluding the defendant from contesting the culpability element of the charge would render the prosecution's evidence on that issue uncontestable as a matter of law, in derogation of the presumption of innocense and the constitutional requirement of prosecutorial proof of guilt beyond a reasonable doubt." 653 P.2d at 391.

The court also rejected the State's policy arguments concerning the problem of acquitting mentally abnormal defendants, with the following analysis:

"The People's last policy argument is that the protection of the community justifies the exclusion of mental impairment evidence in nonspecific intent crimes. The logic of the People's argument is that, notwithstanding the lack of mens rea for the commission of a criminal offense, mentally disturbed persons should not be completely set at liberty upon their acquittal. As we see it, the solution of the problem posed by the People does not lie in barring the admission of mental impairment evidence to negate the requisite culpability for the crime charged, but rather in providing for the confinement and treatment of persons who are mentally ill and pose a danger to themselves or others. See *People v. Wetmore,* 22 Cal.3d 318, 583 P.2d 1308, 149 Cal.Rptr. 265 (1978); Wesson, Mens Rea and the Colorado Criminal Code, 52 U.Colo.L.Rev. 167, 200 (1981)." 653 P.2d at 395.

Finally, the opinion makes reference to an important distinction between the concept of diminished capacity because of a recognized abnormal mental condition and a defense of lack of capacity based on voluntary intoxication. The distinction is an obvious one because, as here, the appellant was claiming to suffer from an uncontrollable, involuntary mental condition, whereas in the intoxication situation the impaired mental state was caused by defendant's own voluntary ingestion of intoxicants.

Although this court has never specifically dealt with the question of when and in what circumstances an accused can present evidence of an abnormal mental condition not amounting to legal insanity as a defense to a given criminal charge, we recognized the defense of diminished capacity in *Peterson v. State,* supra. There we said that diminished capacity:

" ' * * * includes any psychiatrically recognized abnormal mental condition, *other than intoxication produced by the use of alcohol or drugs,* including subnormal intelligence, but which does not constitute legal insanity under any definition of legal insanity.' (Emphasis added.)

"[Citing 22 A.L.R.3d at 1231.] Such a concept recognizes not only that a mental disease or defect not arising to the level of legal insanity may be sufficient to negate the existence of a specific crime element, *People v. Welborn,* 1967, 257 Cal.App.2d 513, 65 Cal.Rptr. 8, it as well exposes the illogic of the 'all or nothing' assumption underlying numerous judicial decisions—that a person is either wholly 'sane' and therefore fully answerable for all his actions, or 'insane' and not answerable at all. *Commonwealth v. Walzack,* 1976, 468 Pa. 210, 360 A.2d 914, 918." 586 P.2d at 152.

The *Peterson* court distinguished between diminished capacity and intoxication in the context of negating criminal intent and concluded that the case before it was concerned with voluntary intoxication allegedly aggravated involuntarily by chemical substances. Hence, the concept of diminished capacity, a defense separate and apart from the defense of intoxication, was not applicable. 586 P.2d at 152–153.

It is apparent that the well-reasoned cases, including *Peterson v. State,* supra, stand for the proposition that the doctrine of diminished capacity is a relevant and provable defense to crimes involving specific intent. Clearly, if a crime requires a specific intent, a defendant who lacks the mental capacity necessary to form that intent cannot commit that crime.

The majority say that "[t]he mental element necessary for commission of a crime has now been established by the legislature," and "[i]f the legislature had intended additional defenses, it would have said so." 668 P.2d at 644. In fact, the legislature has indirectly established the defense of diminished capacity by determining that before a defendant can be convicted of certain crimes a specified mental element must be proven beyond a reasonable doubt. Examples of such crimes include first-degree arson, which now requires proof of "intent to destroy or damage an occupied structure," § 6–3–101(a), W.S.1977, and burglary, which requires "intent to commit larceny or a felony," § 6–3–301(a), W.S.

1977. It would be redundant for the legislature to pass an additional statute to the effect that diminished capacity which precludes the formation of the requisite intent is a defense to specific-intent crimes.

I would hold, as do the majority of courts, that the defense of diminished capacity is available, where the defendant has pled not guilty by reason of mental illness or defect under Rule 15(a), W.R.Cr.P., to negate the element of specific intent for any crime in Wyoming requiring such proof.