**STATE, Plaintiff-Appellee, v TAYLOR, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4034. Decided November 3, 1947.

Ralph J. Bartlett, Prosecuting Attorney, William C. Bryant and T. Vincent Martin, Asst. Pros. Attys., Columbus, for plaintiff-appellee.

Horace S. Kerr and C. C. Crabbe, Garek & Sillman, C. C. Crabbe and Justin Sillman of Counsel, Columbus, for defendant-appellant.

**OPINION**

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Franklin County, Ohio.

The defendant, Alfred A. Taylor, was indicted for the alleged violation of §12412 GC, and charged that the defendant administered and injected a substance into the body of a pregnant woman with the intent to procure a miscarriage, and resulting in her death.

The case was tried to a jury which returned a verdict of guilty. The first three assignments of error, for convenience, will be epitomized and considered together as they all relate to the insufficiency of the evidence. The case is predicated entirely on circumstantial evidence and it is for that reason that this assignment of error is being pursued. The appellant is especially contending that the State utterly failed to prove criminal intent. We have examined the entire record in this case and the exhibits and we are of the opinion that the evidence was sufficient to sustain the verdict. While intent to procure a miscarriage is an essential element of the crime under the statute, positive proof is not necessary, but the same may be inferred from all the disclosed facts and circumstances. Intent is a design or purpose. It is a subjective fact. It is the secret of one's mind and unless he discloses his purpose by words as to why he did a particular act, the only way it may be determined is from the proven facts and the logical inferences which may be drawn therefrom.

The courts have been liberal in the admission of testimony tending to prove intent in that class of cases where intent is an essential part of that offense. **Harrison v The State, 112 Oh St 429; 12 O. Jur. Sec. 306, p. 312.**

Briefly stated, the facts disclose that on the afternoon of October 20, 1942, a Mrs. Thrall entered the office of the defendant and several hours later she was dead, death having resulted from asphyxia, due to emboli. An autopsy was performed and the organs of the deceased were examined and the presence of a foreign substance was found in various organs.

This substance appeared to be a white, soapy-type of cream and was found in the uterus, in the placenta, in the veins, in the walls of the uterus, in the veins of the uterus, in the vena-cava, the interior vena-cava and miscroscopically it was found in the lungs and in the brain.

The evidence disclosed that the circulation of this white, soapy cream in the blood stream caused the pulmonary embolus or clot in the lung. The examination showed that this foreign substance entered the body of the deceased by being injected into the uterus through the cervix.

The autopsy disclosed further that the deceased was pregnant, the length of pregnancy being estimated as approximately seventeen or eighteen weeks.

Among the many exhibits offered was a partially collapsed tube similar to metal tooth paste containers, on which was inscribed, "Use under the direction of your physician", and containing a paper label with the following words: "Eugenic Cream (not a jelly)". This exhibit contained white material with a cream-like consistency and a rose water odor. The record discloses that when this material was placed in a syringe it could be readily expelled through the small opening of the syringe by pressure on the plunger; that when allowed to stand in an open jar, in eight hours it became flaky in appearance, retaining its white color. This creamy substance was identified as the same as the foreign substance found in the body of the deceased. This "Eugenic Cream" was found in the office of the defendant upon immediate investigation after the death. There was also found numerous instruments such as those ordinarily used in a physician's office. There were also found several catheters, each of which had deposits of soapy-like material which was identified as "Eugenic Cream".

Upon consideration of these and all the other facts and all the exhibits we are of the opinion that the jury was justified in finding that the defendant intended to perform an abortion. All the other requirements of the statute were fully met by the proof offered by the State and the verdict was not against the weight of the evidence.

The next assignment of error is that the trial court erred in denying counsel for defendant on their cross-examination of Martha Bauman the right to examine or inspect the paper writing from which the witness read in the course of her direct examination. The record discloses that Martha Bauman was called as a rebuttal witness for the State. She was a stenographer in the Columbus Police Department and took shorthand notes of the questions asked of the defendant and

numerous other witnesses during the investigation. The witness was questioned at length as to specific questions asked of Dr. Taylor and others at Police Headquarters and the answers given. She stated that she had no recollection and in each instance referred to the paper writing which she had previously described as being a typewritten transcript of her stenographic notes. A particular issue was made at the trial on the subject of whether Dr. Simms was questioned the same night and whether Dr. Taylor was present during the questioning of Dr. Simms. Dr. Taylor testified that Dr. Simms was not questioned in his presence to his knowledge. The witness, Miss Bauman, was in a position to rebut Dr. Taylor's statement on this subject. She refreshed her memory from her notes and testified that Dr. Taylor in fact was present. Numerous questions asked of the defendant and answers given by him were read from this record and Miss Bauman testified affirmatively as to their correctness. Many of these questions and answers were in direct conflict with the testimony of Dr. Taylor. On the cross-examination of Miss Bauman counsel for the defendant requested permission to inspect the paper writing or transcript from which the witness had testified on direct examination. Counsel for defendant were denied this request which is the foundation for the alleged error. The authority for the Court's refusal was the case of **State v Rhoads, 81 Oh St 397.** This case holds that where a stenographic record is made by the prosecutor in a private interview with a witness who later testified before the grand jury, and on the defendant's trial, it is error for the Court to require the prosecutor to deliver the transcript of the interview to counsel for the defendant. This case also holds that a person charged with crime is not entitled to a transcript of the evidence taken before the grand jury. But it must be borne in mind that the witness in the Rhoads case, supra, did not testify from the transcript of his former interview, nor did he use it to refresh his memory. The Court comments on such a state of facts at pages 408 and 409 of the opinion:

"This transcript was not evidence, and of itself could never become such under any circumstances of which we can have any present conception, certainly not independent evidence. **If the witness Cannon had been using the transcript from which to testify, or refresh and aid memory in giving testimony on the issue between the state and Rhoads, it might have been entirely proper and justifiable on the part of counsel for the accused to ask on cross-examination the opportunity to inspect the paper being referred to by the witness. In that**

situation, the witness may be interrogated as to the character of the paper being used or referred to, and it became a subject of examination in connection with cross-examination." (Emphasis ours.)

It is not contended by counsel for the defendant that they are entitled to inspect the private files and interviews in the possession of the prosecutor; nor to examine the minutes of the grand jury meetings; but they do contend that when a witness testifies from such an instrument they have the privilege of examination. We find this view supported in Jones' Commentaries on Evidence, 2d Ed., Volume 5, Section 2392:

"In instances where an attempt to awaken present recollection fails, and it is sought to permit use of the memorandum by the witness in order that he may testify therefrom, upon demand of opposing counsel the memorandum must be submitted to him for inspection in order that he may adequately cross-examine. Although there do not appear to be many American decisions directly to the point, it seems to be the rule that opposing counsel have the right to examine the writing as soon as it is identified, and if the witness announces that his memory is not refreshed thereby, they have the right to cross-examine the witness. The reasons are obvious. The witness may not want to have his memory refreshed after having looked at the writing. The writing may contain cross-examinable matter. It may be required in evidence. It may contain matter relevant to some other issue. It may contain matter which should not have been brought under the notice of the witness at that stage. In brief, if there is ground for suspicion that the writing was exhibited disingenuously, the matter calls for explanation which cross-examination alone will yield. If it appears that the document contains matter which might suggest an answer to the witness, and no showing of propriety of the memorandum for such purpose or of the necessity of refreshing the memory of the witness has been made, or if for other reasons the document contains matter which should not be made known to the witness, we think that cross-examination should then and there be permitted. It may be said to be a general rule that the opposite party should be permitted to inspect whatever is put into the hands of a witness on the stand."

Practically the same rule is adopted in 28 R. C. L., Section 186, p. 596:

"It is the well settled rule that the opposing party or counsel has the right, on proper demand, to inspect and use for purposes of cross-examination, any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters as to which he is testifying, and which in fact does tend to refresh his memory. The opposing party is accorded this right in order that he may ascertain whether the paper or memorandum used has any legitimate tendency to bring the fact in controversy to the mind of the witness, and in order that he may be in a position to cross-examine as to the testimony given and thereby test the candor and integrity of the witness. But where a witness has refreshed his present recollection prior to the time of giving his testimony by the use of papers or memoranda out of court, he will not be obliged to produce them for the purpose of allowing the opposing party to make an inspection. And before the opposing counsel or party is entitled to an inspection of memoranda or papers used by a witness for the purpose of refreshing his memory, it must appear that the witness is actually using the papers for that purpose, and further that such papers do tend to refresh his memory. No attorney could claim to be entitled to an inspection of every paper which a witness might have in his custody or even in his hand while giving testimony."

In 42 O. Jur. Section 310, p. 309, it is stated:

"It is a well-settled rule that the opposing party or counsel has the right, on proper demand, to inspect and use for purposes of cross-examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters as to which he is testifying and which, in fact, does tend to refresh his memory. The opposing party is accorded this right in order that he may ascertain whether the paper or memorandum used has any legitimate tendency to bring the fact in controversy to the mind of the witness and in order that he may be in a position to cross-examine as to the testimony given and thereby test the candor and integrity of the witness. Hence, before it may be used to refresh the witness's recollection, the writing itself must be produced in court, in order that the other party may, by cross-examination, share the benefit of the witness by refreshing his memory of every part. But before the opposing counsel or party is entitled to an inspection of memoranda or papers used by a witness for the purpose of refreshing his

memory, it must appear that the witness is actually using them for that purpose and that they tend to refresh his memory; and if the witness used them out of court to refresh his present recollection prior to the time of giving his testimony, he will not be obliged to produce them for the purpose of allowing the opposing party to make an inspection."

It is stated in 125 A. L. R. 192 that a record of past recollection, used as such, must as a general rule, not only be produced in court as a prerequisite to such use, but must on demand be produced for inspection by opposing counsel and his use in cross-examination. The leading case on this question seems to be that of Kinsey v State, 49 Ariz. 201. See also Jewett v United States, 15 F. (2d) 955; Taylor v United States, 19 F. (2d) 813, and numerous other cases cited in 125 A. L. R.

Counsel for the State seems to infer that since Martha Bauman was testifying in rebuttal, that a different rule has application, but we can find no authority which supports this contention. We find that this assignment of error is well taken and that by not allowing defendant the right of inspection of the document used by the witness, he was deprived of a fair trial and for which the judgment should be reversed.

Another error assigned is the alleged misconduct of counsel in the closing argument. The control of counsel during the trial of a case is in some measure a matter of discretion with the trial court. The scope of a closing argument depends somewhat upon that which preceded it. We think after giving consideration to the prior arguments in this case the statements by counsel for the State in the closing argument were not prejudicial to the rights of this defendant. A reviewing court should not reverse upon the ground of misconduct of counsel in the argument of the case unless from the whole record it is clear that the trial court abused its discretion to the prejudice of the complaining party. We find no error under this assignment.

The last error assigned is that the trial court erred in refusing to permit the defendant to show the manner and source of his acquisition of numerous exhibits which the State offered in evidence and which were admitted over the defendant's objection. The record discloses that the State offered in evidence numerous instruments found in the office of the defendant upon investigation by the Police Department immediately after the death occurred. Many of these were surgical instruments which the defendant claimed he had never used and had no use for in his practice. It is claimed

that this was intended to impress the jury, to appeal to their passion, and to cast suspicion upon the defendant who was engaged in a limited practice as a chiropractor. The record discloses that the defense offered to show by the testimony of the proprietor of a local auction house that a sale was conducted of the office effects of a Dr. McCafferty after the latter's death; that, at the sale the defendant purchased a box lot of miscellaneous used intruments, many of which were the same exhibits as received in evidence, and that the defendant acquired these shortly before October 20, 1942. The Court sustained an objection to this testimony for the reason that it was immaterial. Where the used instruments were acquired certainly could throw no light upon the manner in which they were being used on October 20, 1942, but it might have been of some value in explaining just why these instruments were in the possession of the defendant. The manner in which they were acquired might have carried some weight with the jury. We think this evidence should have been admitted although its refusal was not of such a nature as to constitute prejudicial error.

For the foregoing reasons we find prejudicial error in the record. The judgment is reversed and cause is ordered remanded for a new trial.

WISEMAN, PJ, and HORNBECK, J, concur.