This appeal raises the issue whether the juvenile trial court should have dismissed this attempted murder delinquency action on the grounds of insufficient evidence when the appellee State of Ohio failed to prove beyond a reasonable doubt that thirteen year old appellant Theonne Mason intended to murder his brother's girlfriend, Susanne Hrynik, when she maintained at trial he shot her accidentally. We conclude it was plain error to find appellant delinquent when appellee failed to prove intent. Accordingly, we find appellant's assigned errors[1] moot and he is discharged.
The appellee State of Ohio presented one eyewitness to the shooting, Susanne Hrynik. She testified appellant shot her accidentally.
Susanne Hrynik had known appellant for five years. She was his older brother's girlfriend. On the evening in question, appellant arrived at Hrynik's home having brought with him a gun that he had found in an abandoned lot while en route to her house for a visit. Both Hrynik and appellant played with the gun. Initially, Hrynik thought the gun was a fake. She did, however, unload and reload the weapon. Hrynik noted in her testimony that she became afraid of the gun and told appellant to put it in her closet on the top shelf. She remembered that when he took the gun to the closet, she noticed that the trigger was engaged.
Thereafter, they began to play cards. Hrynik eventually accused appellant of cheating. She said he was not angry but threw the cards down and left the room. He just told her "I quit" and left the room. He did not run or stomp out of the room or exhibit any outward signs of anger. He returned seconds later. She saw him but did not observe a weapon or anything special about him. She was watching television seated on the floor with her back to him. Shortly thereafter, Hrynik was shot in the head on the left side behind her ear.
During the trial, Hrynik stated she did not know she had been shot at first. She said she heard a faint pop and then a loud ringing in her ears. She also said appellant was screaming. She asked him what happened and he told her he had shot her. Appellant was so hysterical he could not provide the emergency operators with the necessary information, although it was he who dialed 911 for help.
Hrynik also testified that the shooting was an accident. According to Hrynik's testimony, she told everyone who asked her — the police, the paramedics, her neighbor, and the hospital — the shooting was accidental. Hrynik said appellant did not seem angry when he left the room after she accused him of cheating. She stated there was no connection between the card game and the shooting. When asked if she knew of any reason why Mason would want to kill her, Hrynik replied, "Not at all." (Tr. 47.) Furthermore, during the redirect examination, Hrynik revealed the gun "was already half pulled back" when she told appellant to put it in her closet.
Melvyn Douglas Prince, Chief of Police of the Village of Woodmere Police Department, investigated the incident. Chief Prince questioned appellant twenty minutes after the shooting. At trial, Chief Prince testified that, when asked what happened, appellant replied he shot Hrynik in the head and did not elaborate his response. Chief Prince said appellant was coherent and not "excitable."
Sergeant James Messina also testified at trial. He was among the first officers who arrived at the scene, which was across the street from the police station. Sergeant Messina stated that when he arrived, he encountered Hrynik in the doorway holding a towel over her left ear. After settling her with another officer, Sergeant Messina testified he found appellant in an adjoining room crying hysterically. According to Sergeant Messina, appellant became more hysterical as he tried to talk to him about the shooting. Sergeant Messina further testified that Hrynik told him the shooting was an accident.
At the trial, Hrynik repeatedly told the court that in her opinion appellant held no ill-will towards her and she believed the shooting to be an accident. The police and the appellee concluded otherwise, because appellant was not sufficiently excited when initially questioned by the police. This lack of excitement does not correlate into the crime of attempted murder under any circumstance.
Crim.R. 52(B) allows us to notice plain errors or defects when an accused's substantial rights have been violated. The appellee was required by law to present sufficient evidence as to each element of the offense. State v. Jenks (1991), 61 Ohio St.3d 259. This, appellee did not do. Attempted murder is a specific intent crime, thus evidence of specific intent is a necessary element of proof. R.C. 2923.02(A) and R.C.2903.02(A). See, also, State v. Kidder (1987), 32 Ohio St.3d 279
and State v. Fox (1981), 68 Ohio St.2d 53, 55. When a necessary element has not been shown, we are allowed to notice that omission when the appellant's rights are violated. Here, appellee failed to prove appellant intended to kill Susanne Hrynik. At best, the evidence showed an accidental shooting.
Appellant's intent dwelled in his mind, and unless he disclosed his purpose by words as to why he did what he did, the only way his purpose may be determined was from the proven facts and the logical inferences therefrom. State v. Nichols
(1965), 3 Ohio App.2d 182, citing State v. Taylor (1947),83 Ohio App. 76. Intent is a "design or purpose." Id. Appellee's evidence of design or purpose was that the appellant was caught cheating at cards. Thus, an inference should be drawn that he became angry and from that an inference may be drawn that he retrieved the gun and shot Hrynik. Appellee also concluded that Mason's lack of remorse at the scene indicated guilt.
The appellee's evidence contradicts its inferences. Hrynik, the only person who could have known, stated that appellant was not angry. In fact, she paints a picture of a boy enamored with a gun he had found. She stated he played with it once and was probably playing with the gun when it was discharged. She told the court that it was an accident; that appellant held no ill-will towards her; and that she treated him like a relative.
Hrynik stated that appellant was hysterical. Sergeant Messina said appellant was hysterical and could not talk about the shooting. The chief of police who termed the shooting an attempted murder, questioned appellant 20 minutes later and concluded he lacked remorse. Two witnesses said he was hysterical and one who saw him 20 minutes later said he wasn't. This is not a sound foundation to build an inference of guilt of a crime such as attempted murder.
The Supreme Court of Ohio has held the act of pointing a deadly weapon at another without additional evidence regarding the actor's intention was insufficient as a matter of law to constitute felonious assault. State v. Brooks (1989), 44 Ohio St.3d 185. In Brooks, the evidence was much stronger than here; there, the accused actually threatened the victim. In this case, no threat was made. Certainly, if pointing a gun is not enough without more in a felonious assault case, it is certainly woefully insufficient to sustain the higher crime of attempted murder.
Intent as a rule may be inferred from surrounding circumstances such as the instrument used and the manner of use. State v. Shue (1994), 97 Ohio App.3d 459. Generally, in attempted murder cases, the facts are similar as to intent or purpose — usually anger toward the victim or an argument between the two. For example, in a case involving attempted murder, the defendant and the victim were neighbors who often argued over their properties. After a heated argument in which the defendant threatened to kill the victim, he shot the victim in the neck. State v. Moore (1994), 97 Ohio App.3d 137.
In another case where anger resulted in an attempt to kill, the defendant shot his estranged wife in the head at close range the day after he threatened to kill her. The couple had previously had a series of arguments over their ensuing divorce. State v. Heath (June 25, 1997), Hamilton App. No. L 96 014, unreported. Unlike the defendants mentioned above, appellant neither threatened nor displayed any signs of anger toward Hrynik.
In this case, no words accompanied appellant's action. Hrynik described him as sitting on the couch opposite her. When he returned to the room, she observed nothing unusual. Appellant did not return after an angry card game, point the gun at her, and discharge the gun. Hrynik describes the actions of appellant as consistent with a 13 year old playing with a weapon and having it discharge. Consequently, appellee's evidence is insufficient as a matter of law. Appellant is discharged.
Judgment reversed.
This cause is reversed.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
JAMES M. PORTER, J., and TIMOTHY E. McMONAGLE J., CONCUR.
 _______________________________ PATRICIA ANN BLACKMON ADMINISTRATIVE JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1).
 APPENDIX
ASSIGNMENTS OF ERROR
 I. APPELLANT'S ADJUDICATION OF DELINQUENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
[1] See Appendix