OPINION
Defendant-appellant Raymond Sochor appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of domestic violence in violation of R.C. 2919.25(A).
 STATEMENT OF THE FACTS AND CASE
On March 6, 1998, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C 2919.25(A). The indictment stated that appellant had been previously convicted of domestic violence "in Canton Municipal Court (Case No. 96 CRB 00787) on or about April 18, 1996, and/or in Canton Municipal Court (Case No. 96 CRB 00959), on or about April 18, 1996, and/or in Stark County Common Pleas Court (Case No. 1996CR0878), on or about October 30, 1996." At his arraignment on March 13, 1998, appellant entered a plea of not guilty to the charge in the indictment. A jury trial before Judge Richard Reinbold commenced on May 12, 1998. The following evidence was adduced at trial. In February of 1998, appellant was residing with his wife, Sally Sochor (hereinafter referred to as "Sochor"), in Stark County. At the time, the two had been married for approximately two years. Sochor, who has a bipolar disorder, was taking medication prescribed by a psychiatrist during such time. On February 23, 1998, both appellant, who was having problems with his elbow, and Sochor, who felt like she had a virus, went to Stat Care. Shortly after returning home, appellant, who appeared upset with the doctor's diagnosis of his condition, told Sochor that he was leaving to help a friend work on his car and that he would be home for dinner. Sochor, however, did not believe her husband who she felt was having an affair. For this reason, Sochor became distraught, grabbed her prescription pills, and threatened to kill herself by overdosing on the same. Appellant was aware that his wife had previously attempted suicide in December of 1997. After his wife threatened suicide, appellant attempted to get the bottle of prescription pills away from her. The two struggled over the bottle for approximately one hour before appellant finally was able to get the bottle away from her. Sochor testified that, during the struggle, appellant hit her head and face with his open hand, causing bumps and bruises. During the period from approximately 5:00 to 7:00 P.M. until approximately 10:00 P.M. on February 23, 1998, appellant once again physically abused Sochor. Sochor testified that appellant hit and kicked her, called her horrible names and broke furniture and dishes. When she attempted to leave, appellant squeezed her hand to prevent her from holding onto the door handle. Sochor further testified that appellant knocked her around and, when she begged for mercy on her hands and knees, spit in her face, knocked her down and pulled her hair out. Since appellant had deliberately broken the phone the same evening, Sochor was unable to call for help. In addition, appellant, who Sochor also testified banged her head up against a cupboard, refused to let Sochor go to the hospital to get treatment for the bruises to her ribs, arms, and face. After Sochor's later attempt at escape was unsuccessful, Sochor decided to wait to ask for help until the next day during her appointment at Nova Behavioral Health Care Center. The next day, appellant and Sochor went to Nova Behavioral Health Care Center. While the two were at Nova, Sochor called her father who took her to the hospital. Thereafter, she went to the police station with her father and mother to file a report against appellant for domestic violence. At no point while at the hospital or police station did Sochor mention her suicide attempt. Sochor testified that appellant previously had been convicted of domestic violence against her in October of 1996. After hearing the testimony and other evidence presented at trial, the jury, on March 12, 1998, found appellant guilty of domestic violence. The jury further found that appellant previously had been convicted of domestic violence on October 30, 1996, as alleged in the indictment. Thereafter, the trial court sentenced appellant to prison for a definite term of twelve months, to be served consecutively with his sentence in Stark County Court of Common Pleas case number 1996CR0878. Appellant's sentence, which was the maximum sentence permitted by statute, was journalized in an entry filed on May 20, 1998. It is from his conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF DEFENSE OF OTHERS AND THEREBY DENIED THE APPELLANT OF HIS RIGHTS TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.
ASSIGNMENT OF ERROR II
THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTING ATTORNEY TO ELICIT TESTIMONY FROM SALLY SOCHOR BY USING AN AUDIO TAPE OF HER GRAND JURY TESTIMONY IN VIOLATION OF THE DOCTRINE OF PRESENT RECOLLECTION REFRESHED AND OHIO RULE OF EVIDENCE 607.
ASSIGNMENT OF ERROR III
THE CONVICTION OF THE APPELLANT ON ONE COUNT OF DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR IV
THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM SENTENCE WAS AN ABUSE OF DISCRETION AND NOT SUPPORTED BY THE RECORD.
 I
Appellant, in his first assignment of error, contends that the trial court erred in refusing to give a jury instruction on the affirmative defense of defense of others. Both in writing prior to trial and at the conclusion of the evidence at trial, appellant's trial counsel had requested such a jury instruction. Appellant's request, however, was denied by the trial court. Ohio Criminal Rule 30(A) states, in relevant part, as follows: [a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests." A defendant is entitled to have his instruction included in a charge to the jury provided the instruction is a correct statement of the law, is pertinent and is not included in substance in the general charge. State v. Theuring (1988),46 Ohio App.3d 152. Appellant is correct in his contention that Ohio law recognizes a privilege to defend one's family members. In order to establish the affirmative defense of defense of others, an accused has the burden of proving by a preponderance of the evidence (1) that he, in good faith and upon reasonable grounds, believed that a family member was in imminent danger of bodily harm, (2) that he used a reasonable degree of force to defend the family member, and (3) that he used the same force that he would be entitled to use in self-defense. State v. Williford (1990),49 Ohio St.3d 247, 250. Appellant argues that he was entitled to a jury instruction on the affirmative defense of defense of others since he was essentially defending Sochor from her own threats of suicide. This court is unaware of any law that supports appellant's proposition. The affirmative defense of defense of others clearly applies to a situation where an accused has defended a family member from the actions of a third party, not from him or herself. However, we do not need to decide if a jury instruction of this nature should be given in a situation where someone intervenes to prevent a person from harming herself or himself because the facts in the case sub judice do not support the giving of such an instruction. Sochor testified at trial that after appellant wrestled the prescription drug bottle away from her, he physically abused her over a period of several hours. Even after the threat of suicide had ended and there was no need to protect Sochor from herself, appellant kicked and pushed Sochor, knocked her to the ground and physically assaulted her in numerous other ways over an extended period of time. Appellant clearly was not protecting Sochor from herself by doing so. Based on the foregoing, the trial court, therefore, did not err in refusing to instruct the jury on the affirmative defense of defense of others since such instruction would have been contrary to law and since the evidence adduced, viewed in the light most favorable to appellant, was insufficient to raise the defense. See State v. Robinson (1976),47 Ohio St.2d 103. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant submits that the trial court erred in allowing the prosecuting attorney to refresh Sochor's memory by using an audio tape of her prior grand jury testimony. After Sochor was unable to recall some of the events that occurred on February 23, 1998, the trial court permitted the prosecuting attorney to use the audio tape of her grand jury testimony to refresh her memory, holding as follows: "THE COURT: She heard the tape a week ago. She is obviously in distress. She indicates that she suffers from a bipolar disorder. And the Court is going to permit the State outside the presence of the jury under Rule 612 to play the tape. She can listen to the tape. Obviously you are here, Mr. Hemphill [appellant's counsel]. You will be permitted to listen to it also and to cross-examine on it.
And so, State of Ohio, you may play the tape to assist the witness in refreshing her memory." Transcript of Proceedings at 96.
Appellant asserts that, by doing so, the trial court violated the doctrine of present recollection refreshed and Evid. Rule 607. The extent to which a party may refresh his own witnesses' recollection is ordinarily within the discretion of the trial court. State v. Stearns (1982), 7 Ohio App.3d 11. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v Adams (1980)62 Ohio St.2d 151. The trial court, in permitting the State to use the audio tape of Sochor's grand jury testimony to refresh her memory relied on Evid. R. 612, which concerns the usage of a writing to refresh the memory of a witness. Such rule provides in pertinent part as follows: "Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness hereon, and to introduce in evidence those portions which relate to the testimony of the witness. . . ."
A three part test must be met before the recollection of a witness can be refreshed pursuant to Evid R. 612. First, the witness' memory must be exhausted or nearly exhausted. See State v. Price (1979)60 Ohio St.2d 136. Second, the writing must refresh the recollection of the witness. See Moots v. State (1871), 21 Ohio St. 653. Finally, the opposing party must be provided an opportunity to inspect the writing and to cross-examine the witness regarding the same. See State v. Taylor (1947), 83 Ohio App. 76. This Court finds that the trial court did not abuse its discretion in permitting the use of the audio tape of Sally Sochor's prior grand jury testimony to refresh her memory since the above three part test was met in this case sub judice. When she was questioned by the prosecuting attorney about the events between the time she returned from Stat Care with appellant and the time appellant told her that he was leaving, Sochor was unable to recall what happened. Previously, Sochor had stated that she had tried "to block all this out" because it was "very traumatic" to her. Transcript of Proceedings at 87. The first part of the test set forth above is, therefore, met since Sochor's memory was exhausted or nearly exhausted as to a significant period of time. Appellant contends that it was error for the trial court to allow Sally Sochor to listen to the entire tape of her grand jury testimony when her inability to remember was limited to the events occurring between the time she returned home with appellant and the time appellant told her he was leaving. While we agree that it may have been improper for the trial court to allow Sally Sochor to listen to her prior testimony of the entire evening when she testified only to her inability to remember a portion of the evening, we find any error in this regard to be harmless based on the later testimony of Sally Sochor on cross examination: "Q. Do you recall telling my investigator that you didn't remember the details of what happened on the 23rd? A. Yes. Q. Because your head was fuzzy you just couldn't remember things? A. Yes. Q. Is that true or do you remember? A. Listening to the tape it helped me to remember. Q. Do you have any independent recollection of what happened? A. Not too much of it." (Transcript of Proceedings at 117 — 118)
This testimony of Sally Sochor indicates that her memory of many of the events of the evening was exhausted or nearly exhausted. The second part of the test also is met since, when asked by the trial court whether listening to the audio tape would assist her in refreshing her recollection, Sochor responded as follows: "It might. I see that — when I listen to that — I am just — I can't — I am very nervous. I have been having anxiety problems. I am very nervous. I am trying to block all this out." Transcript of Proceedings at 95.
After listening to the audio tape, Sochor stated that it had helped her "somewhat" in refreshing her memory. Transcript of Proceedings at 97. She later testified that listening to the tape helped her remember. Transcript of Proceedings at 118 as previously quoted. There was sufficient evidence before the court, therefore, that the audio tape of her prior grand jury testimony refreshed Sochor's recollection. Finally, since defense counsel was given the opportunity to both listen to the audio tape and to cross-examine Sochor regarding the same, the third part of the test is met. Thus, contrary to appellant's assertion, this court finds that the trial court did not violate the doctrine of present recollection refreshed in permitting the use of the audio tape to refresh Sochor's memory. Appellant contends, however, that the use of the audio tape in such a manner violated Evid. R. 607. Evid. R. 607 states in relevant part, as follows: "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. . .".
There is no evidence that the prosecuting attorney attempted to impeach Sochor, the State's own witness, through the use of the audio tape of her grand jury testimony. The audio tape was not used to impeach Sochor but rather to refresh her recollection based on her testimony that she could not recall the events of February 23, 1998. Evid. R. 607 was, therefore, not violated. We find that the trial court did not abuse its discretion in permitting the use of the audio tape of Sochor's prior grand jury testimony to refresh her recollection since such decision was not unreasonable, arbitrary or unconscionable. Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, claims that appellant's conviction on one count of domestic violence is against the manifest weight of the evidence. Appellant specifically challenges the credibility of Sally Sochor, whose testimony he asserts was "plagued with memory lapses, inconsistencies, and conflicts with other evidence admitted into evidence at trial." In support of his challenge, appellant points to Sochor's bipolar disorder, the inconsistencies between her grand jury testimony and her testimony at trial regarding appellant's use of a knife, and her inability to clearly recall the facts, among other factors. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. The jury, after hearing Sochor testify and observing her demeanor, clearly found her to be a credible witness. Moreover, both Sochor's father and Patrolman Thomas C. Smith, who took the police report from her, testified that Sochor had bruising around her eye and arm and elsewhere on her body. While Sochor's father testified that she "looked very drained" the day he took her to the hospital, Patrolman Smith testified that Sochor appeared "shaken up" when he took the police report from her. Transcript of Proceedings at 143, 148. Furthermore, while appellant contends that Sochor's medical records, which were admitted into evidence and which indicate that Sochor had contusions to her arms and ribs, do not substantiate the specific acts of abuse she alleged, the jury reviewed both Sochor's testimony and the medical records and came to a different conclusion. Moreover, appellant did not present any medical testimony in support of his contention. Accordingly, upon our review of the entire record, we find that the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. The jury, as trier of fact, was presented with sufficient evidence from which it could find appellant guilty of domestic violence. Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in his final assignment of error, submits that the trial court abused its discretion in imposing the maximum sentence allowable under R.C.2929.14(A) and that such sentence is not supported by the record. R.C. 2929.14(C) permits a trial court to impose the maximum prison sentence authorized by law for the particular offense only upon offenders who have committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing crimes in the future, and upon certain major drug offenders and repeat offenders. Pursuant to R.C. 2929.19(B)(2)(d), before imposing the maximum prison term allowed for a particular offense, the trial court must give its reasons for doing so. The trial court, in sentencing appellant to the maximum, stated as follows: "The Court finds that you have over a period of years indicated your propensity of violence against other people, but especially women and especially this particular complainant. The Court notes that you committed this offense while still on active community control or probation out of Judge Sinclair's courtroom. The Court finds that the victim in this case suffers from a bipolar disorder. The Court finds that due to her unstable mental condition she is especially suspectable [sic] to control of other individuals. The Court finds the facts of this particular case to be most egregious." Transcript of Proceedings at 210.
The trial court clearly complied with R.C. 2929.14(C) and 2929.19(B)(2)(d) in sentencing appellant to twelve months in prison. While appellant asserts that the above reasons given by the trial court to justify the imposition of the maximum sentence were unreasonable, insufficient and not supported by the record, we do not agree given Sochor's testimony as to the physical abuse inflicted upon her by appellant and given appellant's previous history of domestic violence. Since the trial court did not abuse its discretion in imposing the maximum sentence on appellant, appellant's fourth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J. Wise, P. J. and Farmer, J. concur