Robert MITZEL, Petitioner,

v.

Arthur TATE, Warden Respondent.

No. 4:96 CV 2322.

United States District Court, N.D. Ohio, Eastern Division.

July 9, 1999.

706

Thomas R. Wetterer, Jr., Office Of The Public Defender, Ohio Public Defender Commission, Columbus, OH, for Robert Mitzel.

Lillian B. Earl, Office Of The Assistant Attorney General, Cleveland, OH, for Arthur Tate.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

### I. Procedural and Factual Background

Following his conviction and sentence in 1987, Petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter "petition" or "application") on October 25, 1996 (Dkt.# 1). Respondent's Return of Writ (Dkt.# 6) was filed on March 7, 1997, and Petitioner's Traverse (Dkt.# 13) was filed on June 6, 1997.

On February 10, 1999, Magistrate Judge James D. Thomas issued his Report and Recommendation of Magistrate Judge ("R & R"), recommending that Petitioner's application be denied (Dkt.# 20). On March 1, 1999, Petitioner filed timely Objections to Magistrate's Report and Recommendation ("Objections") (Dkt.# 22).[1]

Petitioner is currently serving the sentences imposed in 1987 by the Trumbull

---

1. On March 8, 1999, the Court *sua sponte* entered an Order (Dkt.# 23) vacating its Memorandum Opinion and Order entered on February 26, 1999 (Dkt.# 21), which determined that Petitioner had failed to file timely objections to the report and recommendation of the Magistrate Judge and, accordingly, adopted the report and recommendation of the Magistrate Judge and denied Petitioner's application. In its Order of March 8, 1999, the Court found that Petitioner filed his Objections to Magistrate's Report herein on March 1, 1999, and ruled that the Court for the reason shall consider the merits of Petitioner's Objections.

Also on March 8, 1999, Petitioner filed a Motion To Amend Or Alter Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Dkt.# 24). In this motion, Petitioner moved the Court to alter or amend its aforesaid Judgment entered on February 26, 1999 for the reason that "[t]he deadline for filing objections to the Magistrate Report and Recommendation was miscalculated. The deadline for filing the objections expired on March 2, 1999." Dkt. # 24 at 1.

The Court denied Petitioner's aforesaid Motion To Amend Or Alter Judgment for the reason that it became moot due to the entry of the Order of March 8, 1999 vacating the Memorandum Opinion and Order entered on February 26, 1999.

County Court of Common Pleas, consisting of an indeterminate term of fifteen years to life upon his conviction of the offense of murder, and a term of three years actual incarceration for a firearm specification. These sentences run consecutively. R & R at 7.

The murder victim, Randall Ralston, age 17 at the time of the crime, and Petitioner, then 18 years old, were lifelong friends, having grown up together. R & R at 2. On the day of the incident, January 12, 1987, the deceased approached Petitioner and inquired whether he would "shoot someone for him." Id. According to Petitioner, he deduced that Randall was referring to himself; Randall allegedly was depressed over difficulties he was having with his mother, because he did not want to join the armed services, and because he had just broken up with his girlfriend. Id. Randall had written a "suicide note" at some time proximate to the date of his death, and had given it to Petitioner with the instruction to give the note to "Nicki," his former girlfriend. Though inconsistent with a suicide note, the decedent wanted his death to appear heroic in nature, by suggesting that he had been shot while he was engaged in an altercation with gang members whom he was fighting off with nunchucks. (Nunchucks were discovered with the body at the scene of the incident.) Id. (Additional background facts may be found in the R & R at 3–7.)

For the reasons which follow, the Court finds that none of Petitioner's Objections is well-taken; accordingly, the Court adopts the R & R in its entirety and denies the petition.

## II. Objections

A. *Objection 1:* "PETITIONER OBJECTS TO THE MAGISTRATE'S FINDING THAT THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT FOR [sic] 1996 APPLY [sic] TO THIS PETITION."

Petitioner objects to the Magistrate Judge's finding that the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable to Petitioner's case. Objections at 4–5. This Objection is not well-taken. Petitioner incorrectly asserts that "[t]his issue remains unresolved after *Lindh [v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997) ]." Objections at 5.

▇▇ The Sixth Circuit has resolved this issue in *Williams v. Coyle,* 167 F.3d 1036, 1037 (6th Cir.1999) ("Today we decide that a habeas corpus case is not pending for the purposes of *Lindh* until the application for the writ is filed pursuant to 28 U.S.C. § 2242."). In the instant case, the application for the writ was filed on October 25, 1996, which was subsequent to the effective date of the AEDPA. Therefore, the AEDPA applies herein. *Williams,* 167 F.3d at 1037.

B. *Objection 2:* "PETITIONER OBJECTS TO THE MAGISTRATE'S USE OF THE WRONG STANDARD OF REVIEW UNDER THE AEDPA."

In a lengthy Objection covering nine pages, Petitioner concludes with the following statement: "Magistrate Judge Thomas used the standard adopted by the Seventh Circuit for defining the 'deferential standard of review' as used by the AEDPA. Petitioner maintains that the new standard of review codifies the *Teague* rule for federal habeas proceedings, and any other standard is unconstitutional." Objections at 15. For the reasons which follow, the Court overrules this Objection.

▇▇ The AEDPA "requires heightened respect for state court factual and legal determinations." *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir.1998). With respect to each of the claims asserted herein which were "adjudicated on the merits in State court proceedings," an application for a writ of habeas corpus shall not be granted with respect to these claims unless it meets the new test now used in

the Sixth Circuit, namely, that "for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir.1999), *cert. denied sub nom. Killinger v. Nevers*, —— U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999).

The Sixth Circuit very recently reaffirmed the new *Nevers* test in *Tucker v. Prelesnik*, 181 F.3d 747 (6th Cir.(Mich.)):

> [t]he deference to the state courts' judgments required by the AEDPA is achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be "debatable among reasonable jurists," *Drinkard*, 97 F.3d at 769, if it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," *O'Brien*, 145 F.3d at 25.

*Tucker*, 181 F.3d 747, 753 (quoting *Nevers*, 169 F.3d at 362).

*Nevers* and *Tucker* make clear that the standard of review used by Magistrate Judge Thomas herein was appropriate and passes constitutional muster.[2] This Objection is therefore overruled.

 C. *Objection 3:* "PETITIONER OB-JECTS TO THE MAGISTRATE'S FINDING THAT THE TRIAL COURT DID NOT VIOLATE PE-TITIONER'S RIGHT AGAINST SELF–INCRIMINATION, HIS RIGHT TO DUE PROCESS, AND

HIS RIGHT TO COUNSEL AS GUARANTEED BY THE FIFTH, FOURTEENTH AND SIXTH AMENDMENTS OF THE UNIT-ED STATES CONSTITUTION WHEN IT FOUND THAT THE DEFENDANT KNOWINGLY AND INTELLIGENTLY WAIVED HIS RIGHT AGAINST SELF–INCRIMINATION AND HIS RIGHT TO COUNSEL AND OVERRULED THE DEFEN-DANT'S MOTION TO SUPPRESS AND ALLOWED STATEMENTS TAKEN FROM DEFENDANT ON JANUARY 12, 1987 TO BE ADMISSIBLE AND THAT THE IMPROPER ADMISSION OF THE JANUARY 13, 1987 STATE-MENTS WAS HARMLESS."

With respect to this Objection, the Court notes at the outset that it is not required—nor even permitted—to address the claims set forth in the second ground for relief of the petition. Because these claims were adjudicated on the merits in the State courts, an application for a writ of habeas corpus shall not be granted with respect to these claims unless one of the two exceptions set forth in 28 U.S.C. § 2254(d) (1996) applies to these claims. As noted above, in the Sixth Circuit, the *Nevers* test is the applicable standard of review used to determine whether either of the exceptions applies. *Nevers*, 169 F.3d at 362.

■ The Court concludes that Petitioner has not met his burden of showing that either of the exceptions set forth in § 2254(d) applies to these claims. There-

**2.** The Court also finds instructive the approach taken by the Third Circuit in evaluating a habeas petition under the AEDPA. See *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 880 (3d Cir.1999) ("Like our sister courts of appeals, we are asked to determine the appropriate standard of review governing petitions for a writ of habeas corpus ... In evaluating Matteo's petition, the en banc court must interpret the standard of review provision incorporated into 28 U.S.C. § 2254(d) by the ... AEDPA, which revised the standard of review for habeas corpus petitions. We hold that the revised statute mandates a two-part inquiry: first, the federal court must inquire whether the state court decision was 'contrary to' clearly established federal law, as determined by the Supreme Court of the United States; second, if it was not, the federal court must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence.").

fore, Petitioner has not shown that the decision of the Ohio Court of Appeals is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers,* 169 F.3d at 362. Consequently, the Court may not grant the requested writ with respect to these claims.

The Court reaches this conclusion despite the argument set forth in Petitioner's Objections that this Court must conduct a *de novo* review of these claims:

The voluntariness of a confession is a legal question requiring independent consideration in federal habeas corpus proceedings. *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). This Court must decide whether or not Petitioner knowingly or voluntarily waived his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under the facts of this case this Court must review the alleged *Miranda* violation and the due process claim on the admission of Petitioner's statements. See *Withrow v. Williams,* 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) . . .

Magistrate Judge Thomas found that based on a totality of the circumstances Petitioner was not coerced into waiving his *Miranda* rights. (R. 20, p. 35). See *Ledbetter v. Edwards,* 35 F.3d 1062 (6th Cir.1994). Magistrate Judge Thomas did not properly weigh Petitioner's impaired mental functioning with other factors in determining that the state's [sic] did not overbear Petitioner's will to resist and maintain his *Miranda* rights. Dkt. # 22 at 15–16.

■ The issue of whether a confession is voluntary is a mixed question of law and fact subject to *de novo* review.[3] See *Williams v. Clarke,* 40 F.3d 1529, 1543 (8th Cir.1994), *cert. denied,* 514 U.S. 1033, 115 S.Ct. 1397, 131 L.Ed.2d 247 (1995). Since Petitioner's claims concerning his statements and/or confessions made to the Niles, Ohio police present mixed questions of law and fact, the Court must "decide whether the state court . . . [decision] 'involved an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court.'" *Harpster v. Ohio,* 128 F.3d 322, 327 (6th Cir.1997), *cert. denied sub nom. Ohio v. Harpster,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

■ With regard to the challenged confessions, the Court concludes that Petitioner has failed to rebut the presumption of correctness of the Ohio Court of Appeals' findings of fact by producing "clear and convincing" evidence of their incorrectness, as required by the AEDPA. See 28 U.S.C. § 2254(e)(1) (1996)[4]. A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. See *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 2403, —— L.Ed.2d —— (1999).

Moreover, the Ohio Court of Appeals considered Petitioner's claims with respect to his confessions on the merits, yet Petitioner has failed to show that the exception set forth in the second clause of § 2254(d)(1) applies, so as to permit this Court to grant his application with respect to the claims alleged in the second ground

---

**3.** See *Matteo,* 171 F.3d at 887 (*supra* n. 2) ("Yet a third distinct approach has been espoused by the Courts of Appeals for the Fifth, Seventh, and Eleventh Circuits, which interpret AEDPA to require a distinction between pure questions of law, which are reviewed *de novo,* and mixed questions of law and fact, which receive more deferential treatment." [citations omitted] ).

**4.** Under the pre-AEDPA version of § 2254, a federal court did not presume that state court findings on mixed questions of law and fact were entitled to a presumption of correctness. See, e.g., *Appel v. Horn,* 1999 WL 323805, *4 (E.D.Pa.) (Citing *Miller v. Fenton,* 474 U.S. 104, 113–14, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)).

for relief of the petition. *Harpster*, 128 F.3d at 327. As noted above, the AEDPA "requires heightened respect for state court factual and legal determinations." *Herbert*, 160 F.3d at 1134.

Based upon the aforestated conclusions of this Court, the Court further concludes that Petitioner's Objections to the R & R with respect to Petitioner's statements given to the police on January 12,[5] 1987 are not well-taken. Bearing in mind the exacting standards imposed by the AEDPA upon a party seeking to challenge a State court judgment on collateral review, the Court summarily rejects Petitioner's unsupported Objection[6] that "Magistrate Judge Thomas did not properly weigh Petitioner's impaired mental functioning with other factors in determining that the state's [sic] did not overbear Petitioner's will to resist and maintain his *Miranda* rights." Dkt. # 22 at 16. The Court specifically notes Petitioner's failure to identify the manner in which the Magistrate Judge "did not properly weigh Petitioner's impaired mental functioning with other factors," and his failure to identify what these "other factors" were. Dkt. # 22 at 16.

Notwithstanding the foregoing, the Court will give "independent consideration" to the issue of the voluntariness of the confessions in accordance with *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). In doing so, the Court initially notes that the Ohio Court of Appeals squarely addressed the merits of the issues concerning the admissibility of the confessions, and relied upon the controlling federal precedents in reaching its conclusions regarding these issues.[7]

The Eleventh District Court of Appeals decision[8] in this case addressed the issues concerning Petitioner's confessions as follows:

> In the second assignment, appellant challenges the admission of the various confessions. His main contention is that because of his diminished capacity, he could not have "knowingly and intelligently" waived his rights. To the contrary, the evidence tends to support the conclusion that appellant did knowingly, intelligently and voluntarily waive his rights.

> Initially, he called police to inform them of the suicide. He then drove himself to the station to talk with the police. While he was there, he was orally informed of his rights and offered the opportunity to read the forms. Furthermore, the videotape discloses appellant was sufficiently aware of time, space, geography and his environment to have the wherewithal to comprehend what was occurring. He indicated that he knew the inquisitors were police officers, that he was being questioned regarding the Ralston homicide, that he was volunteering to answer the questions, and

5. Petitioner also gave statements to the police on the following day, January 13, which are discussed separately *infra*.

6. It is noted that the text of Petitioner's Objections to the portion of the R & R dealing with Petitioner's statements given on January 12 is virtually identical to the text of Petitioner's Traverse dealing with those statements (except for the fact that Petitioner substitutes the word "Petitioner" in his Objections for his name "Mitzel" in his Traverse).

7. See *Swann v. Taylor*, 173 F.3d 425 (4th Cir.1999) (concluding that AEDPA's standards do not govern review of a state court decision because the state court did not "mention or appear to apply the controlling federal precedent ... nor does it cite or rely upon state precedents that, in turn, cite or rely upon [federal precedent]").

8. See *State of Ohio v. Robert W. Mitzel*, 1989 WL 110827 (Ohio App.). The Opinion of the Court of Appeals was made part of the record herein and attached to the Return of Writ as State's Exhibit "D." With respect to the facts surrounding Petitioner's pre-trial transactions with the Niles Police Department, indictment, trial, and conviction, the Magistrate Judge set forth in the R & R a five-page "summary of facts" borrowed from the Opinion of the Court of Appeals. Dkt. # 20 at 2–7. In the interest of brevity, this summary of facts is not reiterated herein. -

that he could stop at any time. While no dialogue or exchange occurred in which appellant was questioned to determine his comprehension of his Constitutional Rights rather than simply parroting the appropriate phrases, a sufficient dialogue, in a question and answer format, occurred to indicate an understanding and comprehension of those rights. In addition, throughout the questioning, appellant stated that he knew he could stop at any time, that he did not have to answer the questions, and that he was answering voluntarily . . .

In *State v. Nichols* (1965) 3 Ohio App.2d 182, 209 N.E.2d 750, the court held in paragraph four of the syllabus:

"The fact of subnormal mentality of one accused of a crime testified to by a psychiatrist, may be considered by the trial judge in determining whether a confession offered by the state was voluntary."

Further, in *State v. Jenkins* (1984), 15 Ohio St.3d 164 at 233, 473 N.E.2d 264, the court noted:

"Intelligence is undoubtedly one factor for a court to weigh when considering the voluntariness of an inculpatory statement."

However, from the totality of the circumstances, it appears appellant knowingly, intelligently, and voluntarily waived his rights. Granted, his IQ may be somewhat marginal, but it, in and of itself, is not sufficient to preclude the confession. *Nichols, supra.* The record reflects that he exhibited a sufficient degree of understanding of his fundamental Constitutional Rights, and the mechanics of waiving and foregoing these tenets, so that he was not improperly denied due process.

For the foregoing [reasons], the court did not err by admitting the confessions.

The second assignment of error is overruled.

*State v. Mitzel*, 1989 WL 110827, *5–6.

In conducting its independent review of the Ohio Court of Appeals decision, the Court initially notes that the Eleventh District Appellate Court cited and relied upon Ohio law precedents, which in turn cited and relied upon United States Supreme Court precedents. (See n. 7 *supra.*) Specifically, the Opinion cited and relied upon the *Nichols* and *Jenkins* decisions referenced hereinabove. *Nichols,* 3 Ohio App.2d at 185–186, 209 N.E.2d 750, in turn cited and relied upon the federal precedent of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *Jenkins,* 15 Ohio St.3d at 230–232, 473 N.E.2d 264, cited and relied upon a number of Supreme Court cases: *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Fare v. Michael C.,* 442 U.S. 707, 718, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Additionally, Petitioner has in no way rebutted the presumption of correctness of the Ohio Court of Appeals findings of fact by producing "convincing" evidence of their incorrectness. *Warren,* 161 F.3d at 360–61.

Based upon the foregoing, the Court concludes that Petitioner has not shown in his Objection 3 that Magistrate Judge Thomas prejudicially erred in finding that the State courts did not violate Petitioner's right against self-incrimination, his right to due process, and his right to counsel when the State courts found that Petitioner knowingly and intelligently waived his right against self-incrimination and his right to counsel. Further, Petitioner has not shown that the trial court's overruling of Petitioner's motion to suppress the statements taken from Petitioner on Janu-

ary 12, 1987 and its admission of these statements into evidence was erroneous, nor has he shown that the Court of Appeals' affirmance of these rulings was erroneous.

Magistrate Judge Thomas very thoroughly considered the entire record of the State court proceedings and the controlling federal precedents, and concluded his analysis by stating: "Based on the totality of the circumstances, the record reflects that the three statements made on January 12, 1987, were not coerced by police conduct such as to overbear Petitioner's will to resist. *See Ledbetter*, 35 F.3d at 1067 (citations omitted)." R & R at 35.

Petitioner has not met his burden of showing that the State courts' adjudication of this claim involved an "unreasonable application" of Supreme Court precedent, pursuant to § 2254(d)(1)[9]. Nor has Petitioner shown that the State courts' decisions were "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that [they] are outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362. Accordingly, this Court may not grant the

application with respect to this claim. *Id.* The Court therefore overrules Objection 3 to the extent that it pertains to the admission into evidence of the statements taken from Petitioner on January 12.

With respect to the video-taped confession taken from Petitioner on January 13, 1987, Magistrate Judge Thomas found that Petitioner's counsel had authorized the police to administer a polygraph examination to Petitioner on January 13. R & R at 35–36. Magistrate Judge Thomas further found that upon completion of the polygraph, the police detectives re-interrogated Petitioner without contacting his counsel, and concluded that the detectives had thus violated Petitioner's Sixth Amendment right to counsel.[10]

■ Nonetheless, the Magistrate Judge concluded that this error was "harmless," and cited *Abbott v. Parke*, 893 F.2d 868, 870 (6th Cir.1990) in support of this conclusion. In his Objections, Petitioner challenges this conclusion. Dkt. # 22 at 19. For the reasons which follow, the Court agrees with Magistrate Judge Thomas, and concludes that the Sixth Amendment

**9.** On the contrary, in the course of conducting its independent review of the State court decisions, the Court has located Supreme Court precedent which is ostensibly fatal to Petitioner's position. In *Colorado v. Connelly*, 479 U.S. 157, 159, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) the Court stated: "In this case, the Supreme Court of Colorado held that the United States Constitution requires a court to suppress a confession when the mental state of the defendant, at the time he made the confession, interfered with his 'rational intellect' and his 'free will.' Because this decision seemed to conflict with prior holdings of this Court, we granted certiorari ... We conclude that the admissibility of this kind of statement is governed by state rules of evidence, rather than by our previous decisions regarding coerced confessions and *Miranda* waivers. We therefore reverse."

**10.** Petitioner had relied upon *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) to support his claim that his Sixth Amendment right to counsel was violated when the fruits of this re-interrogation were video-taped by the police and admitted into evidence by the trial court. Traverse at 24–27; R & R at 36. However, Magistrate Judge Thomas correctly concluded that "[b]ecause the [*Minnick*] Court did not reach a Sixth Amendment issue, *Minnick* does not control Petitioner's case." R & R at 38.

Magistrate Judge Thomas further found that the aforesaid re-interrogation of Petitioner without the knowledge or consent of his counsel violated the rule set forth in *Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("If police initiate interrogation after the defendant's assertion at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for the police-initiated interrogation is invalid."). R & R at 41–42.

Magistrate Judge Thomas thus concluded: "In sum, the record before the undersigned reflects a violation of Petitioner's Sixth Amendment right to counsel. (*See* Tr. Vol. I at 61–74, *see also Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). Thus, Petitioner's statement given on January 13, 1987 should have been excluded from the prosecution's evidence presented at trial." R & R at 42 (footnote omitted).

violation was at most harmless error, because evidence other than Petitioner's statement of January 13, 1987 was sufficient to convict Petitioner of the offense of murder. Framing the question differently, this Court is not of the opinion that this statement had "substantial and injurious effect or influence"on the jury's decision. See *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).[11]

First, Magistrate Judge Thomas properly relied upon *Abbott,* 893 F.2d at 870, for the proposition that the "harmless error analysis is applicable to Sixth Amendment violations which are limited to the erroneous admission of particular evidence at trial." R & R at 42. See *Brecht,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (holding that in habeas corpus cases brought pursuant to § 2254, the standard governing harmless error for trial-type constitutional errors is the one articulated in *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Second, the Magistrate Judge catalogued the evidence—other than the challenged statement of January 13—introduced at Petitioner's trial and probative of guilt as to the offense of murder, and concluded that Petitioner was properly convicted on the basis of this evidence:

A review of Petitioner's record reveals, that in addition to the statement

now challenged, Petitioner made three previous confessions to the police. (*See* Tr. Vol. I at 16–17, 19–24, 26–28). These confessions were properly found admissible. (*See* discussion above.) There was forensic evidence and testimony which reflects that Petitioner shot a firearm shortly before his arrest. (Tr. 93–95, 97–99, 170–74). Petitioner himself testified that he owned the gun used in the shooting incident, he purchased the bullets used, and gave the police the receipt from that purchase. (Tr. 212–13, 237, 357). Petitioner testified that the victim requested Petitioner to shoot him and that he was present during the shooting incident. (Tr. 211, 216–17). Petitioner also testified that after the first wound occurred, he watched the victim roll around and then at the victim's urging, he shot the victim in the head, causing the second wound. (Tr. 217–18). The only conflicting evidence pertains to how the first wound occurred.

In regards to the first gun shot wound, Petitioner testified that in an attempt to stop the victim, he grabbed the victim's thumb and the gun went off. (Tr. 216–17). The pathologist, Dr. Adelman, however, demonstrated the angle from which the first wound occurred. (Tr. 169–70). Dr. Adelman testified that the first shot was a contact wound and that the pressure from the gun would

11. In *Brecht,* the Supreme Court clarified the differences between the standard of review set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and the standard of review set forth in *Kotteakos:*

The imbalance of the costs and benefits of applying the *Chapman* harmless-error standard on collateral review counsels in favor of applying a less onerous standard on habeas review of constitutional error. The *Kotteakos* standard, we believe, fills the bill. The test under *Kotteakos* is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." 328 U.S., at 776, 66 S.Ct., at 1253. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to

habeas relief based on trial error unless they can establish that it resulted in "actual prejudice." See *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) [parallel citations omitted]. The *Kotteakos* standard is thus better tailored to the nature and purpose of collateral review and more likely to promote the considerations underlying our recent habeas cases. Moreover, because the *Kotteakos* standard is grounded in the federal harmless-error rule 28 U.S.C. § 2111, federal courts may turn to an existing body of case law in applying it. Therefore, contrary to the assertion of petitioner, application of the *Kotteakos* standard on collateral review is unlikely to confuse matters for habeas courts.

have been from "slightly in back of the victim." (Tr. 164, 166–67). Dr. Adelman further testified that the pressure was from the "back and the top," and the angle was "slightly downward." (Tr. 170, 175). Dr. Adelman testified that neither shot, by itself, immediately killed the victim. (Tr. 165–66).

The testimony of the pathologist, corroborated by the overwhelming circumstantial evidence, Petitioner's first three confessions, and Petitioner's own testimony, clearly establishes Petitioner's guilt. Upon review of the whole record, any error committed by the admission of the January 13, 1987 confession, was harmless beyond a reasonable doubt.

R & R at 43–44.

In his Objections, Petitioner challenges the Magistrate Judge's conclusion that he was appropriately convicted of the offense of murder in accordance with the above-catalogued evidence:

Ralston had two gunshot wounds. The first gunshot wound was not survivable. It became critical for the state to prove to the jury that Petitioner intentionally fired the first shot, since Petitioner was charged with aggravated murder. The state's theory was asserting that Petitioner shot Ralston with prior calculation and design to cause his death.

During this last interview [on January 13] Petitioner was questioned again about the events of the previous day. Petitioner continued to agree with the police that he shot Ralston three (3) times in the head (T.P. 120) [footnote omitted]. Petitioner also indicated that he put his thumb on Ralston's thumb when the first shot was fired. (T. pp. 121–22). Petitioner indicated that he was still scared. (T.P. 125). Petitioner feared everyone including Ralston, who used to beat him up. (T.P. 125). Petitioner also indicated that he would have still called the police, if no one had gotten his license plates, because he was scared. (T.P. 124). Officer Tedesco be-

lieved that Petitioner was scared (T.P. 126). At one point the interrogation focused on the first shot. Petitioner's answers described his role as pulling on Ralston's thumb at one time, and at another time as grabbing hold of Ralston's thumb (T. pp. 121–122, 129).

Barium and antimony tests indicated that Ralston and Petitioner recently fired a gun (T. pp. 131–134, 173). The evidence presented at trial indicated that the contact wound was not survivable. (T. pp. 159, 165–166, 176). The police wanted to present evidence that Petitioner was involved in creating the contact wound. The state used the statements made on January 13 to create confusion on the cause of the contact wound and convince the jury that Petitioner created the first wound. The prosecutor pointed out the taped statement in his rebuttal argument (T. pp. 308, 311). The state's reference to the statements demonstrates the importance of the evidence. *These additional statements were critical to the state's case and not harmless.* See *United States v. Wolf,* 879 F.2d 1320, 1324 (6th Cir.1989); *Christopher v. Florida,* 824 F.2d 836 (11th Cir.1987). *The admission of these statements deprived Petitioner of his right to a fair trial, in violation of his constitutional rights.*

This constitutional violation deprives Petitioner of his right to a fair trial. Petitioner's culpable involvement in the first gunshot wound was critical to the state. The state manipulated a statement out of Petitioner about the first shot, and then used that distortion to confuse the jury about Ralston's self-inflicted wound. Petitioner was deprived a fair trial. This Court should grant a writ of habeas corpus.

Dkt. # 22 at 20–22 (emphasis added).

The Court concludes that Petitioner's Objection to the Magistrate Judge's conclusion that Petitioner was appropriately convicted of the offense of murder is not well-taken. Petitioner had been indicted

for the offense of aggravated murder, but the jury's verdict indicated that the jury did not believe that he caused the victim's death with "prior calculation and design," as alleged in the indictment. Nonetheless, the Court concludes that the record contains ample evidence to support the jury's decision to convict Petitioner of the lesser included offense of murder. The trial judge appropriately instructed the jury that they could convict Petitioner of the offense of murder if they found that Petitioner "purposely caused the death of Randall Ralston." Tr. 332.

With respect to this Objection, Magistrate Judge Thomas correctly stated: "The only conflicting evidence pertains to how the first wound occurred." R & R at 15. The substantial weight of the evidence suggests to the Court that the victim and Petitioner together caused the first wound suffered by the victim.

However, it is not necessary to believe that Petitioner *alone* caused the *first* wound, in order to find him guilty of murder. There is no question that Petitioner *alone* caused the *second* wound.

The forensic pathologist, Dr. Adelman, testified that neither gunshot wound, by itself, immediately killed the victim. (Tr. 165–66.) Dr. Adelman testified that the time frame from the time the shots were fired until the victim died "could be variable from several minutes to approximately an hour." (Id.) Moreover, under the circumstances existing at the time Petitioner created the second wound, it is not unreasonable to say that the victim might have survived had the second gunshot wound not been inflicted.[12]

For the aforesaid reasons, it is clear that the "suicide/assisted suicide" argument or "defense" that Petitioner has attempted to advance throughout these proceedings is not well-taken. In his Traverse, Petitioner argued: "The jury could have found that the first or both gunshot wounds were part of a suicide plan initiated by Randall Ralston." Dkt. # 13 at 33. Even if the jury had concluded that Randy *alone* caused his *first* wound, it was certainly within their prerogative to nevertheless convict Petitioner of murder, based upon his uncontroverted admission during his trial testimony that he alone caused the *second* wound. (Tr. 217–18.)

Dr. Adelman testified that it was "possible" that the first wound *alone* could have caused the victim's death had it not been timely medically treated, and that it was "less likely" that the second wound *alone* would have caused death if not timely treated. (Tr. 175–78.) Nevertheless, Petitioner of course *knew* about the first wound when he administered the gunshot causing the second wound; therefore, the victim's death was reasonably foreseeable to Petitioner under the circumstances.

In his Charge to the jury, the trial judge instructed the jury as to "cause:"

Cause is an act which in the natural and continuous sequence directly produces the death and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act.

The causal responsibility of the Defendant for an unlawful act is not limited to its complete or most obvious result. He is responsible for the natural, logical and foreseeable results that follow in the ordinary course of events from an unlawful act.

The test for foreseeability is not whether the Defendant should have

12. In its recitation of facts, the Eleventh District Court of Appeals found that, in a statement given to the police on January 12, 1987, Petitioner claimed that after he and the victim had gone behind "the old King's building" the following events occurred: "The victim had asked appellant to shoot him, but he refused. The decedent then took the rifle, put it to his head, and pulled the trigger. He fell to the ground, but was not dead. Appellant asked him if he wanted medical help, but the decedent declined and told appellant to shoot him until he was dead. The appellant admitted that he fired three more shots." See Dkt. # 20 at 4.

foreseen the injury in its precise form or as to a specific person. The test is whether a reasonably prudent person, in light of all the circumstances, would have anticipated that death was likely to result to anyone from the performance of the unlawful act.

Tr. 335–36.

The Court notes, in particular, that part of the Charge which stated: "Cause is an act which in the natural and continuous sequence directly produces the death *and without which it would not have occurred.*" (Tr. 335 (emphasis added).) The Court further notes that the *second* wound suffered by the victim *can* be the "cause" of his death in this sense: Dr. Adelman testified that assuming that the *first* wound were not timely treated, it was "possible" that it could have caused death by itself. (Tr. 176.) He did *not* testify that the first wound alone would have "certainly" or even "probably" caused death. Therefore, following the judge's instruction with respect to the definition of "cause," the jury could properly conclude from this testimony that the *second* wound caused *solely* by Petitioner was a cause of the death.[13] A reasonably prudent person, in light of all the circumstances, would have anticipated that death was likely to result to the victim from the performance of the unlawful act, to-wit: the infliction of the second gunshot wound.

For these reasons, the Court rejects Petitioner's suggestion that because "[t]he first gunshot wound was not survivable," it therefore "became critical for the state to prove to the jury that Petitioner intentionally fired the first shot, since Petitioner was charged with aggravated murder." Dkt. # 22 at 20. Accordingly, the Court is not persuaded that the admission of the statements of January 13 was prejudicial error by Petitioner's argument that:

The police wanted to present evidence that Petitioner was involved in creating the contact [first] wound. The state used the statements made on January 13 to create confusion on the cause of the contact wound and convince the jury that Petitioner created the first wound. The prosecutor pointed out the taped statement in his rebuttal argument (T. pp. 308, 311). The state's reference to the statements demonstrates the importance of the evidence.

Dkt. # 22 at 21.

The trial judge thus correctly instructed the jury concerning the lesser included offense of murder, i.e., that "the Defendant purposely caused the death of Randall Ralston." (Tr. 332.) The trial judge correctly instructed that "[a] person acts purposely when it is his specific intention to cause a certain result." (Id.) When the jury determined that Petitioner caused the second wound by shooting the victim in the head, they properly could convict Petitioner of murder by applying the instruction given to them that "[i]f a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon ... Where an act is a crime, a good motive or purpose is not a defense." (Tr. 333.)

Additionally, Petitioner again has failed to rebut the presumption of correctness of the Ohio Court of Appeals findings of fact with respect to this claim by producing "clear and convincing" evidence of their incorrectness. *Warren,* 161 F.3d at 360–61.

In conclusion, the Court rejects Petitioner's challenge to the Magistrate Judge's conclusion that he was properly convicted of the offense of murder. As shown above, Petitioner's contention in his Objections that the statements which he gave to the

---

13. Indeed, it would not have been unthinkable for the jury to have concluded that Petitioner purposefully caused the victim's death "with prior calculation and design" when he inflicted the second gunshot wound, and thereby committed the offense of aggravated murder.

police on January 13, 1987 with respect to the causation of the first wound were not "critical to the state's case and not harmless" is not correct. Dkt. # 22 at 21. These statements were not "critical" because it was not "critical" to the state's case—as Petitioner argues—for the jury to conclude that Petitioner "was involved in creating the contact [first] wound." Dkt. # 22 at 21. Since these statements were not "critical," Petitioner has not shown that their admission into evidence at trial "might have affected the outcome of the trial." See *Turpin v. Kassulke*, 26 F.3d 1392, 1396 n. 4 (6th Cir.1994), *cert. denied*, 513 U.S. 1118, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995). Therefore, Petitioner has not shown that their admission deprived Petitioner of his constitutional right to a fair trial.

Petitioner has not met his burden of showing that the State courts' decisions with respect to the admission of these statements were "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that [they] are outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362. Accordingly, this Court may not grant the application with respect to this claim. *Id.*

D. *Objection 4:* "PETITIONER OBJECTS TO THE MAGISTRATE'S FINDING THAT REVIEWING THE JANUARY 13, 1987 TAPE WAS NOT NECESSARY."

With respect to this Objection, Petitioner begins by stating that Magistrate Judge Thomas found that Petitioner's statements given on January 13, 1987 were taken in violation of the Sixth Amendment and should have been suppressed. Dkt. # 22 at 22. As stated previously, the Court concurs in this conclusion.

However, Petitioner next states: "Magistrate Judge Thomas also found that it was not necessary for him to review the January 13, 1987 tape of Petitioner's interview. (R. 20, p. 42)." Dkt. # 22 at 22. Upon examination of the cited page (42) of the R & R, the Court fails to discern any

language used by the Magistrate Judge on that page that might support the suggestion that he "found" that it was "not necessary for him to review the January 13, 1987 tape of Petitioner's interview."

Nevertheless, the Court will consider the remaining portion of this Objection, because whether or not the Magistrate Judge actually made the above "finding," the Court's disposition of Objection 3 above shows that the constitutional violation caused by the admission into evidence of the January 13, 1987 statements was harmless error. The balance of Objection 4 states:

A tape of that interview was played to the jury (T.P. 112, State Exhibit 8). To determine the potential impact of the tape on the jury Magistrate Judge Thomas should have ordered the record to be expanded to include the tape. See Rule 7 of the Rules Governing Section 2254 Cases. A complete review of the impact of the unconstitutional admission of the tape could not be undertaken without the tape. See *Hanna v. Riveland*, 87 F.3d 1034 (9th Cir.1996).

Dkt. # 22 at 22.

Since the Court has previously concluded that the admission of the tape into evidence was harmless error, the Court further concludes that it was unnecessary for the Magistrate Judge to order the record to be expanded to include the tape "[t]o determine the potential impact of the tape on the jury." Dkt. # 22 at 22.

Petitioner has failed to show that the State courts' decisions that the admission of the tape into evidence was proper were "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that [they] are outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362. Accordingly, this Court may not grant the application with respect to this claim. *Id.* Objection 4 is overruled.

E. *Objection 5:* "PETITIONER OBJECTS TO THE MAGISTRATE'S

FINDING THAT THE TRIAL COURT DID NOT DENY PETITIONER A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY AND [SIC] THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON AIDING AND ABETTING A SUICIDE AND AS TO THE THEORY OF THE DEFENSE"

In this Objection, Petitioner complains that the Magistrate Judge should have concluded that the trial court violated his constitutional rights by failing to instruct the jury on aiding and abetting a suicide "and as to the theory of the defense." With respect to the latter, Petitioner cites one Supreme Court precedent, *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), in support of his argument that a trial court has a "duty to charge the jury upon the theory of the defense." Dkt. # 22 it 23. However, in *Mathews*, the Court stated in the first sentence of its opinion: "This case requires the Court to determine whether a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, *where the evidence warrants*, on the affirmative defense of entrapment." *Mathews*, 485 U.S. at 59, 108 S.Ct. 883 (emphasis added).

The Court finds that *Mathews* is not controlling federal precedent [14] herein, because it held that an accused may have the requested instruction "where the evidence warrants." *Id.* In the case *sub judice*, the State courts and the Magistrate Judge both correctly determined that the evidence did *not* warrant an instruction on the "theory of the defense." The Court, therefore, overrules Objection 5 to the extent that it challenges the trial court's

failure to charge the jury "upon the theory of the defense."

With respect to the trial court's failure to instruct the jury on aiding and abetting a suicide, the Magistrate Judge concluded that "Petitioner fails to demonstrate that a jury instruction regarding the aiding and abetting of a suicide was warranted." R & R at 47. Petitioner objects to this conclusion and argues that "[t]he trial court should have instructed the jury on aiding and abetting a suicide is not a crime in Ohio" and that "[t]he assisting in a suicide was a complete defense. The trial court should have given that instruction since the evidence supported the instruction." Dkt. # 22 at 23.

While aiding and abetting a suicide may not be a crime in Ohio, and while assisting in a suicide may be a "complete defense" to a charge of homicide, the weak link or fallacy in Petitioner's argument is that "the evidence supported the instruction." Id. The Magistrate Judge recognized this when he stated that "[t]he Eleventh Appellate District concluded that the evidence presented at Petitioner's trial revealed that Petitioner's active participation in the victim's death went 'beyond that of aiding and abetting'." R & R at 47.

■ The Eleventh District Court of Appeals itself first noted that the decision to issue instructions rests within the sound discretion of the court. See *State v. Mitzel*, 1989 WL 110827, *7. In this regard, errors in the application of state law are usually not grounds for federal habeas relief. See *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In any event, the Court concludes that Petitioner has failed to show that any errors in the application of Ohio law, or violations of Ohio law and procedure, occurred in the

---

**14.** See 28 U.S.C. § 2254(d)(1) (1996).

State court proceedings with respect to the requested instruction on aiding and abetting, much less that any such errors or violations infringed any specific federal constitutional protections enjoyed by Petitioner.

With respect to defense counsel's failure to request and the trial court's failure to give a jury instruction on aiding and abetting a suicide, the Eleventh District Court of Appeals continued as follows:

"Furthermore, prior to those instructions being issued, there must be sufficient evidence to warrant the inclusion of those instructions. [Citation omitted.] Conversely, *if the evidence is insufficient on the issue, the court should not present the instructions.* Therefore, before determining whether counsel erred by not requesting the instructions and the court erred by not giving the instructions, we must first determine whether there was sufficient evidence that appellant was *only* aiding and abetting a suicide, rather than *actively participating in a murder.*"

*Mitzel,* 1989 WL 110827, *7 (emphasis added throughout).

In proceeding to "determine whether there was sufficient evidence that appellant was only aiding and abetting a suicide, rather than actively participating in a murder," the Court of Appeals stated that "[t]he definition of an 'aider and abettor' within the meaning of R.C. 2923.03(A)(2), is one who assists or encourages another to commit a *crime,* and participates in the commission thereof by some act, deed, word, or gesture." *Mitzel,* 1989 WL 110827, *8 (emphasis added).

Petitioner has consistently argued herein that he was merely aiding and abetting the victim's suicide rather than murdering him when he shot the victim. It appears to the Court that pursuant to the above-stated definition of "aider and abettor," as a matter of law, Petitioner could not have been an "aider and abettor" to the victim's suicide, because suicide is not a "crime" under Ohio law, as Petitioner has re-

peatedly pointed out herein. On this basis, the Court concludes that the trial court was not required or even permitted to give this requested instruction.

■ The Ohio Court of Appeals rested its decision concerning this issue on another basis as well. Referring to the definitions of the words "aid" and "abet" set forth in 25 Ohio Jurisprudence 3d (1981), 177 and 4 Ohio Jury Instructions (1988), Section 523.03, at 341, the Court stated: "If the accused's participation goes beyond these actions, his status alters from that of an aider and abettor to that of an active participant or co-principal."

In the cause sub judice, such an alteration occurred. Even accepting the evidence in a light most favorable to appellant, this court, given the evidential table, cannot find that appellant acted solely as "an aider and abettor" in a suicide. While the circumstances and extent of appellant's involvement with wound number one (the contact wound) are somewhat cloudy, the evidence, by appellant's own admission, regarding wound number two, clearly indicates that he loaded, aimed, and fired a bullet into the decedent's head. This action transforms his status from simply aiding and abetting to actively participating ... These actions were tantamount to separate, distinct, active participation beyond that of "aiding and abetting." This evidence was so overwhelming so as to indicate active participation and preclude an instruction of complicity pursuant to R.C. § 2923.02(A)(2).

*Mitzel,* 1989 WL 110827, *8.

In conclusion, Petitioner has failed to show that the State courts' decisions not to give a jury instruction on aiding and abetting a suicide and as to the theory of the defense were "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that [they] are outside the universe of plausible, credible outcomes." *Nevers,* 169 F.3d at 362. Accordingly, this Court may not grant the

application with respect to this claim. *Id.* Objection 5 is overruled.

F. *Objection 6:* "PETITIONER OB-JECTS TO THE MAGISTRATE'S FINDING THAT THE STATE PRESENTED SUFFICIENT EV-IDENCE TO SUPPORT PETI-TIONER'S CONVICTION FOR MURDER."

█ In a habeas corpus proceeding, where there is a dispute as to the facts of a case, a federal district court should credit the version of the facts most favorable to the prosecution. See *Turpin,* 26 F.3d at 1394 n. 1 (citing *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In *Jackson v. Virginia,* the Supreme Court stated:

Only under a theory that the prosecu-tion was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. *That theory the Court has rejected in the past. Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150. *We decline to adopt it today.* Under the standard established in this opinion as necessary to preserve the due process protections recognized in *Winship,* a federal habeas court faced with a record of historical facts that supports conflict-ing inferences must presume—even if it does not affirmatively appear in the rec-ord—that the trier of fact resolved any such conflicts in favor of the prosecution, *and must defer to that resolution.* Ap-plying these criteria, we hold that a rational trier of fact could reasonably have found that the petitioner commit-ted murder in the first degree under Virginia law.

*Jackson,* 443 U.S. at 326, 99 S.Ct. 2781 (emphasis added throughout).

The Eleventh District Court of Appeals considered this claim and concluded that "the state only needed to prove every ele-ment beyond a reasonable doubt," in ac-cordance with *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523. *State v. Mitzel,* 1989 WL 110827, *7.

The Court has addressed the issue of the sufficiency of the evidence in depth in its discussion of Objection 3 above. Peti-tioner, again, argues in his Objections that he simply assisted the victim with his sui-cide, and therefore he is not criminally liable because aiding and abetting a suicide is not a crime in Ohio, pursuant to *State v. Sage,* 31 Ohio St.3d 173, 178, 510 N.E.2d 343 (1987). Dkt. # 22 at 28.

The Eleventh District Court of Appeals properly determined that *Sage* is not con-trolling in this case:

Specifically in *Sage,* the court concluded that **** a surviving participant of a mutual suicide pact, who provides the means of death to the decedent, is [not] guilty of a criminal offense existing un-der Ohio law. [*State v. Sage* (1987), 31 Ohio St.3d 173, 177, 510 N.E.2d 343.] It continued **** under Ohio law, suicide, attempted suicide or aiding and abetting a suicide are not crimes. *Id.* at 178, 510 N.E.2d 343. The court noted that Ohio had not specifically enacted legislation which made such activity a criminal of-fense.

While we recognize the law of this state on this issue as announced in *Sage,* we do not find it to be controlling. First, nothing within the evidential table sug-gests that a mutual suicide pact existed [as in *Sage* ].

Second, as delineated in this assignment, appellant's actions went beyond that of aiding and abetting the decedent with his suicide. Finally, we take note of the holdings in other jurisdictions which suggest actions of this nature would con-stitute affirmative acts beyond that of simply aiding and abetting and therefore an offense.

1989 WL 110827, *10 n. 1.

Petitioner has failed to rebut by clear and convincing evidence the correctness of the factual determinations of the State courts with respect to this claim. *Warren,*

161 F.3d at 360–61. Additionally, Petitioner has failed to show that the State courts' adjudication of the issue of the sufficiency of the evidence was not a "plausible, credible outcome." *Nevers*, 169 F.3d at 362. Accordingly, this Court may not grant the application with respect to this claim. Objection 6 is overruled.

G. *Objection 7:* "PETITIONER OBJECTS TO THE MAGISTRATE'S FINDING THAT PETITIONER WAS PROVIDED WITH EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL."

In this Objection, Petitioner asserts that Magistrate Judge Thomas found that Petitioner could not prove he was prejudiced by any of the alleged deficiencies of trial counsel. Dkt. # 22 at 30; R & R at 27. For the reasons which follow, the Court concurs in this finding of the Magistrate Judge.

Petitioner argues that his trial counsel failed to make the adversarial process work in his case when trial counsel did not request a jury instruction that would have allowed the jury to find his client not guilty if Petitioner aided and abetted Randall Ralston in committing suicide. Dkt. # 22 at 30–31. Petitioner further argues that there was enough evidence adduced at trial to warrant an instruction that aiding and abetting in a suicide is not a crime. "That defense counsel neither requested such an instruction, nor objection [sic] to its omission, was a substantial violation of a duty owed to the client." Id. at 31.

 Magistrate Thomas correctly noted that "the burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal," pursuant to *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). R & R at 26–27.

The Magistrate Judge also noted that during Petitioner's direct appeal, the Eleventh District Court of Appeals concluded that, as a matter of Ohio law, there was insufficient evidence to warrant an instruction on aiding and abetting a suicide. R & R at 27. "More importantly," the Magistrate Judge determined, "Petitioner fails to demonstrate that the trial court's omission of the 'aiding and abetting a suicide' instruction was a constitutional violation." Id. Magistrate Thomas completed his analysis by noting that a review of the record led to the conclusion that it was highly unlikely that the giving of this instruction would have resulted in Petitioner's acquittal, and that in any event "that possibility is too speculative to justify the conclusion that constitutional error was committed." R & R at 27–28.

The Court concludes that nothing in Petitioner's Objection 7 causes the Court to doubt the validity of any of the Magistrate Judge's above conclusions with respect to this claim. Since Petitioner continues to fail to demonstrate that the requested instruction was warranted, the Court joins Magistrate Judge Thomas in finding no merit in Petitioner's claim that his trial counsel's failure to request this instruction constitutes ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Objection 7 is overruled.

H. *Objection 8:* "PETITIONER OBJECTS TO THE MAGISTRATE'S FINDING THAT THE TRIAL COURT DID NOT DENY PETITIONER A FAIR TRIAL WHEN IT REFUSED HIS REQUEST TO GIVE THE JURY INSTRUCTION ON INDEPENDENT INTERVENING CAUSE OF DEATH AS CONTAINED IN 4 OHIO JURY INSTRUCTION (1981) 69, SECTION 409.55(F)."

 In this Objection, Petitioner claims that "[a] standard instruction on independent intervening cause was warranted and the defendant had a substantial right to that instruction." Dkt. # 22 at 32.

Magistrate Thomas stated that this claim had been raised in the Ohio Court of Appeals and that the Court had concluded, on the basis of Ohio law, that the facts of Petitioner's case did not warrant an instruction on an independent intervening cause of death. R & R at 48.

The Court agrees with Magistrate Thomas that "Petitioner, again, fails to demonstrate that the Eleventh Appellate District's reasoning was incorrect or legally insufficient. Further, Petitioner fails to demonstrate that such an issue is a federal constitutional ground on which habeas relief can be granted." Id. See *Estelle*, 502 U.S. at 71–72, 112 S.Ct. 475; also see *Henderson*, 431 U.S. at 154–55, 97 S.Ct. 1730.

> The Ohio Court of Appeals reasoned:
>
> Appellant simply alleges that the facts warrant the charge; however, this is incorrect. The evidence indicates that appellant fired the shot which caused wound number two, and maybe assisted with the one which caused wound number two. Nothing within the record suggests that there was an intervening cause ...
>
> The cause of death was the result of both wounds. Furthermore, the appellant's actions came after he had ascertained that the decedent was still alive.
>
> Given these facts, the court properly rejected the instructions.

*State v. Mitzel,* 1989 WL 110827, *9.

For the foregoing reasons, the Court overrules Objection 8.

I. *Objection 9:* "PETITIONER OBJECTS TO THE MAGISTRATE'S FINDING THAT PROSECUTORIAL MISCONDUCT IN THE CLOSING ARGUMENT DID NOT DEPRIVE PETITIONER OF A FAIR TRIAL."

Petitioner begins this Objection by stating: "Magistrate Judge Thomas found that the prosecutor's comments did not rise to a level of misconduct. (R. 20. p. 29)." Dkt. # 22 at 33. Petitioner additionally states:

> Courts have cautioned that where the prosecutor misstates facts, refers to evidence outside the record, interjects his or her personal belief that a defendant is guilty, or appeals to the passions of the jurors, there is a serious infringement upon the role of the jury as fact finder and determiner of guilt or innocence; and therefore a denial of defendant's due process rights. *United States v. Bess,* 593 F.2d 749, 755 (6th Cir.1979).

Id.

■ The Court agrees with Magistrate Judge Thomas that the prosecutor's comments did not constitute misconduct. The Court does not perceive that any of the above types of misconduct catalogued in *Bess* occurred during Petitioner's trial.

The balance of this Objection states:

> In closing argument, the prosecutor asserted that a pathologist proved that Randall Ralston could not have physically fired the first shot. (T. pp. 311–312) [footnote omitted].
>
> Dr. Adelman was not qualified as an expert on weapons. (T.P. 173). Dr. Adelman demonstrated how the weapon could have been [sic] to cause the wound, but did not give a lay or expert opinion that it was impossible to cause this wound to be self-inflicted.
>
> A timely objection was made in the form of a motion for mistrial. (T.P. 312). The motion was overruled and no corrective instruction was given. (T.P. 312).
>
> In isolation, these comments were not prejudicial, however, in light of the other errors that occurred these comments undermine the reliability of the trial. The defense case was based in part on the fact that Ralston was holding the gun against his head when it discharged. Accordingly, the prosecutor's remark was prejudicial to the defense, and confused the jury resulting in Petitioner being deprived of a fair trial.

Dkt. # 22 at 33–34.

Magistrate Judge Thomas stated that Petitioner "mischaracterizes what the

Prosecutor stated in his closing argument." R & R at 29. The Court agrees. The Magistrate Judge correctly summarized the substance of the pathologist's testimony, as well as the remarks of the prosecutor in closing argument:

A review of the pathologist's testimony reflects that the prosecutor's closing argument accurately summarized what the pathologist's testimony revealed. (See Tr. 169–70, *compare* Tr. 310–11). Contrary to Petitioner's argument, the prosecutor did not state that "the pathologist proved that Randall Ralston could not have physically fired the first shot." (*See* Tr. 310–11). Rather, during his testimony, the pathologist demonstrated the angle of the first gun shot wound to the victim's head. (Tr. 170). The prosecutor merely reminded the jury of this testimony, that it contradicted the information in Petitioner's confession and testimony, and then hypothesized that the victim did not fire the first shot. (*See* Tr. 310–11). In short, the Prosecutor argued the evidence presented during the testimony and urged the jury to draw a certain conclusion. (Tr. 310–11).

R & R at 30.

Petitioner fails to supply any reason why Dr. Adelman had to be "qualified as an expert on weapons." Dkt. # 22 at 33. Nor does he explain why Dr. Adelman was required to "give a lay or expert opinion that it was impossible to cause this wound to be self-inflicted," or how the absence of such an opinion prejudiced Petitioner. Id. Nor does the Court perceive that Petitioner's motion for mistrial was well-taken, or why a corrective instruction had to be given under the circumstances.

Finally, the Court rejects Petitioner's contention that because "[t]he defense case was based in part on the fact that Ralston was holding the gun against his head when it discharged ... the prosecutor's remark was prejudicial to the defense, and confused the jury resulting in Petitioner being deprived of a fair trial." Dkt. # 22 at 34.

First, as stated above, the prosecutor did not make the "remark" the Petitioner claims he made. Second, "the fact that Ralston was holding the gun against his head when it discharged" does not in and of itself have any bearing on the jury's determination that Petitioner committed murder when he caused the victim's second gunshot wound.

The jury *may* have believed that Petitioner solely caused the first gunshot wound, or that he and the victim together caused this wound, or even that the victim himself solely caused the first wound. Nevertheless, regardless of whom the jury believed caused the first wound, they acted within their prerogative to convict Petitioner of murder on the bases of his conduct subsequent to the infliction of the first wound and Dr. Adelman's testimony concerning the cause of death. For this reason, even if it remains unclear who actually caused the first wound, this issue is not dispositive herein. Accordingly, the Court declines Petitioner's invitation to conduct an evidentiary hearing on this issue.

Contrary to Petitioner's argument, there is no evidence that the jury was "confused" by anything the prosecution stated in closing argument; Petitioner's claim that such confusion resulted in Petitioner being deprived of a fair trial is therefore rejected.

For the foregoing reasons, Petitioner's Objection 9 is overruled.

## III. Conclusion

The Court has reviewed *de novo* the Report and Recommendation of Magistrate Judge Thomas. The Court finds that the Report and Recommendation is well-supported for the reasons stated herein, and that Petitioner's Objections are without merit. Therefore, the Report and Recommendation of Magistrate Judge James D. Thomas is hereby **ADOPTED** and Petitioner's Objections are overruled. Accordingly, Petitioner's application for a Writ of Habeas Corpus is **DENIED**.

Accordingly, this action is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

IT IS SO ORDERED.